IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Civil Action No.: _____

VICTOR GALAN

*Petitioner*

Versus

TIM HOOPER, Warden
Louisiana State Prison

*Respondent*

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
PURSUANT TO TITLE 28 U.S.C., SECTION 2254

Respectfully submitted, *pro se*, this 19th day of September, 2022.

_Victor Galan_

Victor Galan #732647
M.P. - Spruce 1
LA State Prison
Angola, LA 70712

## TABLE OF CONTENTS

page

COVER

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES...............................................................................................ii

PETITION FOR WRIT OF HABEAS CORPUS...............................................................1

JURISDICTION AND VENUE..........................................................................................1

STATEMENT OF THE CASE............................................................................................2

STATEMENT OF THE FACTS..........................................................................................4

STATEMENT OF TIMELINESS........................................................................................5

ASSIGNMENT/SPECIFICATION OF ERROR................................................................6

ISSUES PRESENTED........................................................................................................7

STANDARD OF REVIEW.................................................................................................8

ARGUMENT......................................................................................................................9

    1.........................................................................................................................9

    2.......................................................................................................................10

    3.......................................................................................................................14

    4.......................................................................................................................17

    5.......................................................................................................................21

    6.......................................................................................................................23

    7.......................................................................................................................24

CONCLUSION.................................................................................................................25

CERTIFICATE OF SERVICE..........................................................................................26

EXHIBITS AND APPENDICES

## TABLE OF AUTHORITIES

**page**

Constitution

Louisiana Constitution, Article 1, § 2.................................................................10, 17, 21, 25

Louisiana Constitution, Article 1, § 3................................................................................25

Louisiana Constitution, Article 1, § 13...................................................................10, 21, 25

Louisiana Constitution, Article 1, § 16...................................................................10, 17, 25

Louisiana Constitution, Article 1, § 17................................................................................21

Louisiana Constitution, Article 1, § 22................................................................................25

United States Constitution, Amendment 5...........................................................10, 17, 21, 25

United States Constitution, Amendment 6...........................................................10, 21-22, 25

United States Constitution, Amendment 14..........................................................10, 17, 21, 25


Code

28 U.S.C. § 2254..........................................................................................................1

La. C.Cr.P. Art. 926......................................................................................................6

La. C.Cr.P. Art. 929......................................................................................................6

La. Code Evid. Art. 801................................................................................................12

La. Code Evid. Art. 802................................................................................................12

La. Code Evid. Art. 803............................................................................................10-11

La. R.S. 14:42..............................................................................................................2

La. R.S. 14:89.1............................................................................................................2


Federal Cases

Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)................................15

Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).........................15

Burge v. St. Tammany Parish, 187 F.3d 452 (5th Cir. 1999)................................................19

Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011)..........................6

Dolan v. Dretke, 168 Fed.Appx 10 (5th Cir. 2006)..............................................................5

Draughon v. Dretke, 427 F.3d 286 (5th Cir. 2005)..........................................................16

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)...............................3

Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).........................22

Flanagan v. Johnson, 154 F.3d 196 (5th Cir. 1998)............................................................5

Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004)..............................23

Gordon v. Dretke, 107 Fed. Appx. 404 (5th Cir. 2004).........................................................5

Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)..................................3

Hernandez v. Thaler, 630 F.3d 420 (5th Cir. 2011)..............................................................3

Howland v. Quarterman, 507 F.3d 840 (5th Cir. 2007).........................................................5

Johnson v. Quarterman, 479 F.3d 358 (5th Cir. 2007)..........................................................3

Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).................................23

Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)................................8

Latiolais v. Whitley, 93 F.3d 205 (5th Cir. 1996)............................................................8, 25

Lindstadt v. Keane, 239 F.3d 191 (2nd Cir. 2001)..............................................................16

Loyd v. Whitley, 977 F.2d 149 (5th Cir. 1992)...................................................................20

McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).......................3

Medina v. California, 505 U.S. 437, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992)......................22

Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001)................................................................3

Mellon v. United States, 170 F.2d 583 (5th Cir. 1948).........................................................13

Moore v. Johnson, 194 F.3d 586 (5th Cir. 1999)............................................................16, 20

Nero v. Blackburn, 597 F.2d 991 (5th Cir. 1979)................................................................24

Pavel v. Hollins, 261 F.3d 210 (2nd Cir. 2001)..................................................................15

Phillips v. Donnelly, 216 F.3d 508 (5th Cir. 2000)...............................................................5

Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003)................................................................5

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...............8, 16

U.S. v. Wynn, 292 F.3d 226 (5th Cir. 2002).......................................................................5

United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).......................16

United States v. Kayode, 777 F.3d 719 (5th Cir. 2014).........................................................3

United States v. Lueben, 812 F.2d 179 (5th Cir. 1987).........................................................15

United States v. Riddle, 103 F.3d 423 (5th Cir. 1997)..........................................................15

State Cases

State v. Bennett, 345 So. 2d 1129 (La. 1977)..............................................................22

State v. Chism, 591 So.2d 383 (La.App. 2 Cir. 1991)....................................................20

State v. Foret, 628 So.2d 1116 (La.1993)....................................................................12

State v. Horn, 2016-0559, 251 So.3d 1069 (La. 2018)..................................................23

State v. Kennedy, 803 So.2d 916 (La. 2001)................................................................20

State v. Laprime, 437 So.2d 1124 (La. 1983)...............................................................20

State v. Lott, 535 So.2d 963 (La.App. 2 Cir. 1988).......................................................20

State v. Matthis, 07-0691, 970 So.2d 505 (La. 11/2/07)..................................................8

State v. Mitchell, 412 So.2d 1042 (La. 1982).................................................................9

State v. Ste. Marie, 801 So.2d 424 (La. App. 3 Cir. 2001).............................................12

State v. Tucker, 619 So.2d 1076 (La. App. 1 Cir. 1993)............................................11-12

State v. Victor Galan, 277 So.3d 365 (La App. 1 Cir. 2019).........................................2, 4

State v. Victor Galan, 291 So.3d 1042 (La. 1/22/20)...................................................2, 5

State v. Washington, 491 So.2d 1337 (La. 1986)...........................................................8

Other

Rehabilitation Act of 1973..........................................................................................24

Americans with Disabilities Act...................................................................................24

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR GALAN

   *Petitioner*

Versus

TIM HOOPER, Warden
Louisiana State Prison

   *Respondent*

Civil Action

Case No.: _____

Section: _____

Judge: _____

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON
## IN STATE CUSTODY PURSUANT TO TITLE 28 U.S.C., SECTION 2254

NOW INTO COURT comes, Victor Galan, *pro se* Petitioner herein, who petitions this Honorable United States District Court, Eastern District of Louisiana, for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254, and submits that he is being held in custody in violation of Federal Law and the United States Constitution.

Petitioner asks this Honorable Court to issue a Writ of Habeas Corpus granting relief from his unlawful custody by issuance of an Order of Acquittal, or, at the least, by ordering that Petitioner's case be remanded for a new trial. Alternatively, this case should be remanded for an Evidentiary Hearing.

Petitioner respectfully presents the following in support of this Petition:

### JURISDICTION AND VENUE

Jurisdiction arises under Title 28 U.S.C. § 2254(a); Federal Judges shall entertain habeas corpus application "on behalf of a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States."

This petition is respectfully filed into the United States District Court for the district in which Petitioner was unlawfully indicted, tried, convicted and sentenced.

1

## STATEMENT OF THE CASE

On June 25, 2015, Victor Galan, *pro se* Petitioner herein, was charged by Felony Bill of Information with 1 count of aggravated crime against nature, La. R.S. 14:89.1(A)(2)(b) with a person under the age of thirteen. (Appendix D)[1]. Petitioner was arraigned on this charge July 16, 2015, and pled not guilty.

On May 02, 2017, a superseding Bill of Indictment was filed charging Petitioner with 1 count of aggravated rape, La. R.S. 14:42. (Docket No. 563468 Div. "B") (Appendix C). Petitioner was arraigned on this charge on May 16, 2017, and pled not guilty.

Petitioner went to a bench trial, Honorable August J. Hand, Judge Presiding, which started on April 02, 2018, and ended on April 05, 2018, at which time the trial court found Petitioner guilty as charged. (Appendix B). Defense counsel moved for a new trial which was denied by the court. After waiving sentencing delays, Petitioner was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. (Appendix B).

Petitioner appealed his conviction and sentence to the Louisiana First Circuit Court of Appeal. On November 12, 2018, Lieu T. Vo Clark with the Louisiana Appellate Project filed a direct appeal brief on behalf of Petitioner. On December 25, 2018, Petitioner filed a *pro se* Supplemental brief. (Docket No. 2018-KA-1481).

On May 14, 2019 the First Circuit Court of Appeal affirmed Petitioner's conviction and sentence. (before McDonald, Crain, and Holdridge, JJ.). *State v. Victor Galan*, 277 So.3d 365 (La. App. 1 Cir. 2019).

Petitioner then filed a *pro se* Application for Writ of Certiorari in the Louisiana Supreme Court on June 05, 2019. Petitioner's writ application was denied on January 22, 2020. *State v. Victor Galan*,

---

1 Exhibits AA (writ denial in Louisiana Supreme Court) and BB (writ application to Louisiana Supreme Court) are appended to this document. All other Appendices and Exhibits cited are contained within Exhibit BB.

291 So.3d 1042 (La. 1/22/20). (Appendix A).

On April 04, 2021, a timely filed Application for Post Conviction Relief was filed in the District Court. (Exhibit B). On December 10, 2021, the District Court denied post conviction relief. (Exhibit A).

On January 03, 2022, Petitioner filed an Application for Supervisory Writs in the Louisiana First Circuit Court of Appeal, (Appendix 1), which was denied on March 14, 2022. (Docket No. 2022-KW-0021) (before Guidry, Holdridge, and Chutz, JJ.) (Appendix 2).

An Application for Certiorari or Review was filed in the Louisiana Supreme Court on March 29, 2022 (Exhibit BB), which was denied on September 07, 2022. (Exhibit AA).

The instant petition for writ of habeas corpus timely follows.

Petitioner states that he has remained in continued custody since his arrest, and is currently being held in custody at the Louisiana State Prison at Angola, Louisiana, Tim Hooper, Warden.

Further, Petitioner is a *pro se* litigant. Therefore, he asks that his efforts herein be liberally construed as he has made a good faith effort to follow form. *United States v. Kayode*, 777 F.3d 719, 741, n. 5[2] (5th Cir. 2014).

---

2 [FN 5] See, e.g., *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (acknowledging that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed") (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and See also *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction.") *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) (Briefs by *pro se* litigants are afforded liberal construction…."); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (reasoning that the *pro se* habeas petitioner's argument that he should not be punished for the improper setting of the return date should be construed as a request for equitable tolling, despite his failure to "explicitly raise the issue of equitable tolling").

3

## STATEMENT OF THE FACTS

The Louisiana First Circuit Court of Appeal summarized the facts of the case on direct appeal in the following manner:

> The victim, E.B.R.M., is the biological daughter of the defendant, and in 2014 lived with the defendant, her mother (who was married to the defendant), and her two younger sisters (also children of the defendant and the victim's mother). At trial, E.B.R.M. testified that following her eleventh birthday, the defendant began touching her breasts and buttocks, then began masturbating on her and sodomizing her, sometimes while she was in bed with her sisters. The abuse continued over a six month period and stopped when E.B.R.M.'s mother reported the abuse to the police. The defendant denied raping or inappropriately touching E.B.R.M., claiming the daughters are illegal immigrants and were coerced into making these accusations against him to obtain a "U-visa," which is available to certain crime victims and their families.

*State v. Victor Galan*, 277 So.3d 365, 367-368 (La. App. 1 Cir. 2019).

4

STATEMENT OF TIMELINESS

The Louisiana Supreme Court denied review on direct appeal on January 22, 2020. *State v. Victor Galan*, 291 So.3d 1042 (La. 1/22/20)

On April 21, 2020, Petitioner's conviction became final for purposes of the AEDPA when the 90 day period for seeking relief in the United States Supreme Court expired. *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003).

The one-year period began to run on April 22, 2020, the day after Petitioner's conviction became final. See *Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998). Three-hundred forty-eight (348) days elapsed until Petitioner filed his Application for Post Conviction Relief on April 04, 2021, and tolled the one-year limitation period, leaving seventeen (17) days until expiration of the one-year period, to wit:

On April 04, 2021, Petitioner filed his original Application for Post Conviction Relief and Memorandum in Support. On December 10, 2021, the District Court denied Petitioner's Post Conviction Relief Application.

On January 03, 2022, Petitioner filed his Application for Supervisory Writ of Review in the First Circuit Court of Appeal. On March 14, 2022, the First Circuit Court of Appeal denied Supervisory Writ of Review. (Docket No. 2022-KW-0021).

On March 29, 2022, Petitioner filed an Application for Writ of Certiorari or Review in the Louisiana Supreme Court. On September 07, 2022, the Louisiana Supreme Court issued a ruling in this case, stating: "Denied. See per curiam." (Docket No. 2022-KH-0544).

Petitioner has been timely filed in all courts throughout the case at bar, and shows he has diligently pursued his right to Federal Habeas Corpus Review. *Howland v. Quarterman*, 507 F.3d 840 (5th Cir. 2007); *Dolan v. Dretke*, 168 Fed.Appx 10 (5th Cir. 2006); *Gordon v. Dretke*, 107 Fed. Appx. 404 (5th Cir. 2004); *U.S. v. Wynn*, 292 F.3d 226 (5th Cir. 2002), (all citing *Phillips v. Donnelly, supra*).

ASSIGNMENT/SPECIFICATION OF ERROR

The ruling of the Louisiana Supreme Court (Exhibit AA) is an erroneous interpretation and unreasonable application of established State and Federal laws, and departs from the legal precedents set by the United States Supreme Court and the Louisiana Supreme Court. The ruling improperly "confronts the set of facts that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011).

Further, Petitioner has properly invoked the post conviction articles, and has met the initial requirements of identifying with factual specificity, constitutional claims which would entitle him to post conviction relief. He is therefore entitled to an evidentiary hearing, with discovery and appointment of counsel, to properly present his claims to the court.

The District Court erred by erroneously requiring Petitioner to fully prove his claims in his PCR application, and summarily dismissing the PCR without an evidentiary hearing. This is sanctioned by the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court by their denial of Supervisory Writs. Petitioner has stated valid claims which, if proven, would entitle him to post conviction relief. He is therefore entitled to an evidentiary hearing in order to do just that.

Additionally, Petitioner has shown sharply contested facts between the State and Applicant. La. C.Cr.P. Art. 929. The District Court judge failed to follow the Louisiana Statutes, specifically Articles 926(E) and 929, and failed to grant Petitioner the opportunity to prove his claims. The State's Answer clearly delineates sharply contested facts as between the State and the Petitioner. The District Court judge simply adopted the State's position, and denied Petitioner due process and access to the courts. This is sanctioned by the higher courts by their denial of Supervisory Writs.

This Honorable Court should grant Petitioner habeas corpus relief, or at least an evidentiary hearing, with discovery and appointment of counsel in order to properly present his claims.

6

## ISSUES PRESENTED

1.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO RE-URGE MOTION FOR MISTRIAL WHEN TRIAL RESUMED AFTER 2-DAY STAY TO REVIEW LATE DISCLOSURE OF DISCOVERY  DOCUMENTS BY THE STATE.

2.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT TO INADMISSIBLE HEARSAY AND CSAAS  TESTIMONY  BY EARNEISHA LOTT AND NURSE ANN TROY AT TRIAL.

3.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO SECURE EXPERT TESTIMONY TO AID DEFENSE AT TRIAL, AND CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

4.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT AND REQUIRE THE TRIAL COURT TO CONSIDER ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

5.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR    FAILING TO CONSULT PETITIONER ON HIS RIGHT TO A JURY TRIAL AND FORCED PETITIONER TO GO TO TRIAL WITH A JUDGE INSTEAD OF A JURY.

6.     PETITIONER'S TRIAL COUNSEL WAS MADE AWARE THAT PETITIONER HAD HEARING PROBLEMS AND USED A HEARING AID, AND COUNSEL FAILED TO MAKE ACCOMMODATIONS AT TRIAL.

7.     TRIAL COUNSEL FAILED TO ASK FOR A REPLACEMENT TRANSLATOR, EVEN THOUGH COUNSEL SPOKE SPANISH AND COULD NOT UNDERSTAND THE TRANSLATOR AT TRIAL.

## STANDARD OF REVIEW

The standard of review for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So.2d 1337, 1339 (La. 1986), requires a defendant to show not only that his trial attorney's performance fell below an objective standard of reasonableness under prevailing professional norms, but also that counsel's inadequate performance prejudiced him to the extent that the trial was rendered unfair and the verdict suspect, *i.e.*, that counsel's errors undermined the proper functioning of the adversary process. *State v. Matthis*, 07-0691, 970 So.2d 505 (La. 11/2/07).

Further, the question of ineffective assistance of counsel is a cumulative one. It is improper to divide each issue up in an effort to "conquer" them. A reviewing court is required to review the totality of the circumstances and the cumulative effect of counsel's lapses. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) (when reviewing counsel's effectiveness, court must look to "all the circumstances" of the trial.); *Latiolais v. Whitley*, 93 F.3d 205 (5th Cir. 1996) (Accumulation of errors is grounds for a new trial).

Additionally, a reviewing court must look at the case as a whole in order to review it for errors and omissions of counsel that would undermine confidence in the verdict, as well as to reassess the "prejudice" prong of the *Strickland* test because of the "reasonable probability of a reasonable doubt" standard set in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

ARGUMENT

1.    TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO
RE-URGE MOTION FOR MISTRIAL WHEN TRIAL RESUMED AFTER 2-DAY STAY TO
REVIEW LATE DISCLOSURE OF DISCOVERY DOCUMENTS BY THE STATE.

Trial counsel clearly requested a mistrial, and it should have been granted due to the prejudice

to the defense because of the State's failure to disclose evidence until after the State's witnesses had

testified. (Appendix F). *State v. Mitchell*, 412 So.2d 1042 (La. 1982). Trial counsel failed to take writs

to the appellate court in this important matter concerning prejudice to Petitioner at his trial.

This denial of a mistrial 1) violated Petitioner's right to prepare a defense; 2) precluded

impeachment of the State's witnesses based on the belated disclosure; and 3) allowed the State to get a

second bite at the apple by either recalling the witnesses to introduce the evidence, or cross-

examination if the defense called the witnesses in its case. There is also the fact that, in either case, the

State had access to its witnesses and could discuss their testimony before they got back on the stand.

Again, trial counsel objected to the prejudicial evidence and continued the motion for mistrial.

The judge again denied a mistrial, even though he acknowledged that the defense was prejudiced. The

judge stated that had this been a jury trial, a mistrial would be granted immediately. (Appendix F, p.

305).

There is no difference in the prejudice to the Petitioner under the law in whether there is a jury

or a judge trial. If a mistrial would have been granted without question in a jury trial, a mistrial should

have been declared in this judge trial.

At the very least, the appellate court would have precluded the belated evidence from trial, and

there is a reasonable probability the appellate court would have ordered the asked for mistrial.

Failure of trial counsel to take writs to the appellate court clearly prejudiced Petitioner at trial.

Petitioner has been denied his constitutional rights to due process, to present a defense, and effective

9

assistance of counsel, which is clear on the face of the record.

Further, trial counsel complained to the court that he was from out of state and did not have the resources, did not have time because he had a federal sentencing scheduled, and that this was his last case as an attorney and he was supposed to already have started his new job as the CEO of a construction company. In other words, it was far too inconvenient for trial counsel to actually do his job, it was his last case, and he needed to move on quickly. (Appendix F, p. 323).

Petitioner was deprived of his rights to due process, to present a defense, and effective assistance of counsel guaranteed him by both the United States Constitution, Amendments 5, 6 and 14, and the Louisiana Constitution, Article 1, §§ 2, 13 and 16. Therefore, Petitioner is entitled to Post Conviction Relief.

2.   TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT TO INADMISSIBLE HEARSAY AND CSAAS TESTIMONY BY EARNEISHA LOTT AND NURSE ANN TROY AT TRIAL.

While statements for purposes of medical treatment and medical diagnosis in connection with treatment are exceptions to the hearsay rule, La. Code Evid. Art. 803(4), when not working under the direction of a physician, such statements are not an exception to the hearsay rule. No physician testified at trial. There is no indication that either Earniesha Lott, or Nurse Ann Troy was working under the direction of a physician in this case, and their testimony as to what the alleged victim said, was inadmissible hearsay not objected to by Petitioner's trial counsel. It was also improper use of "delayed disclosure" in order to bolster the credibility of the alleged victim.

La. Code Evid. art. 803(4) provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the

10

declarant is available as a witness:

. . .

Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.

The 1999 Author's Notes regarding the Rule 803(4) exception to the hearsay rule state:

Without considering whether a statement by a child molestation victim to a therapist-certified social worker might qualify as a statement for "purposes of medical treatment and medical diagnosis in connection with treatment," the court in *State v. Tucker*, 619 So.2d 1076 (La. App. 1 Cir. 1993), held the admission of such testimony was inadmissible hearsay and was reversible error. The Authors agree with the result reached. The "statements for purposes of medical treatment and medical diagnosis in connection with treatment" should be given a narrow rather than expansive interpretation, and a statement to a therapist social worker not working under the direction of a physician should not be considered as fitting within this exception.

La. Code Evid. 803(4), 1999 Author's Notes (8).

In *Tucker*, the victim's therapist/certified social worker testified that the victim had told her about sexual abuse by the defendant. She specifically stated what the child had told her during the therapy sessions. She also testified that the victim's conduct with the anatomically correct dolls indicated sexual abuse. The defendant denied all charges and objected to the introduction of the hearsay evidence regarding disclosures made to the therapist by the victim. The court found that without the hearsay testimony from the victim, the social worker could not have testified as to her conclusions. The court also found there was not enough evidence to sustain the defendant's conviction for molestation of a juvenile without reliance on the improperly admitted hearsay. It was the State's burden to prove beyond a reasonable doubt that the therapist's hearsay testimony did not contribute to the jury's finding of guilt, and the State did not meet that burden; therefore, the defendant's conviction was reversed, the sentence was vacated and the case was remanded for a new trial. . . .

However, as cited above, the 1999 Author's Notes to that article clearly

11

state that "a statement to a therapist social worker not working under the direction of a physician should not be considered as fitting within this exception." There is no evidence in this case that the social worker was working under the direction of a physician, Thus, Ms. Hayes' statements as to what the victims told her regarding the abuse should be inadmissible hearsay.

*State v. Ste. Marie*, 801 So.2d 424, 431-432 (La. App. 3 Cir. 2001), citing *State v. Tucker*, 619 So.2d 1076 (La. App. 1 Cir. 1993).

Clearly, neither Earniesha Lott, nor Nurse Ann Troy were working under the direction of a physician, and their reiteration of what the alleged victim told Earniesha Lott, (Appendix E), and Nurse Ann Troy, (Appendix G), is inadmissible hearsay prejudicial to Petitioner at his trial. La. C. Evid. Arts. 801(C) and 802.

Further, trial counsel should have objected to testimony regarding psychiatric phenomena called Child Sexual Abuse Accommodation Syndrome (CSAAS). The "delayed disclosure" and other CSAAS psychiatric phenomena testified to by Earniesha Lott, (Appendix E), and Nurse Troy, (Appendix G), only served to bolster the credibility of the alleged victim, in violation of *State v. Foret*, 628 So.2d 1116 (La.1993). The *Foret* Court found that opinions based on CSAAS were of dubious reliability, even by trained psychologists; it is a clinical opinion, not a scientific instrument, and it is not intended as a diagnostic devise. Rather, it assumes abuse in order to explain a child's reaction to it. Further, the *Foret* Court found the "known or potential rate of error" quoted in the literature to be far too high to meet the *Daubert* criteria: "While Dr. Faller might have been content with a 32% margin of error, we are not so comfortable, especially remembering that '[t]he integrity of the criminal trial process is too important to permit it to be compromised by the admission of dynamic speculations.'" *Id.* at 1126.

Additionally, credibility testimony has the effect of, "putting an impressively qualified expert's stamp of truthfulness" on a witness' testimony." *Foret*, at 1129. This also goes for witnesses other than the accusing witnesses, by bolstering their credibility before it is attacked and before they ever get on

the stand.

In fact, on the last question asked on direct examination, the prosecutor point blank asked Earniesha Lott at trial:

> Q.   Has she ever given you any reason to think she's lying?
> A.   No.

(R.p. 244) (Appendix E).

Both Ms. Lott and Nurse Troy testified regarding the psychological phenomenon of "delayed disclosure," and neither of them is a doctor, a psychiatrist, or a psychologist. Indeed, there is no psychologists or psychiatrists that ever actually diagnosed the alleged victim as having any of the CSAAS psychological phenomena at any time. Moreover, since this was a judge trial, there was no reason to introduce this inadmissible testimony in order to "educate" a jury.

Ms. Lott and Nurse Troy's testimony was introduced at trial by the prosecutor solely to "doubly emphasize his evidence before the jury as against that of the accused." *Mellon v. United States,* 170 F.2d 583 (5th Cir. 1948).

The *Mellon* court also stated,

> We are of the opinion the trial court erred in permitting the witness Edgar to testify that on the day after the alleged offense he told his superior, Bennett, the details of the alleged bribe attempt, and thereafter to permit Bennett in his testimony to bolster Edgar's version of the incident, as reported to him.

(*Id.* at 585).

Ms. Lott and Nurse Troy's testimony only served to bolster the alleged victim's "version of the incident, as reported to him." Since the State's case relied entirely on the credibility of the complaining witness, this testimony was highly prejudicial to the Petitioner, as it impermissibly enhanced the alleged victim's credibility.

Further, the *Mellon* court held, "The general rule is that a witness may not be corroborated or have his testimony reinforced by proof that on previous occasions he has made the same statements as those made in his testimony." (*Id.* at 585-586).

13

Trial counsel failed to object to this irrelevant, immaterial, and highly prejudicial testimony when it was introduced, and further allowed its prejudicial impact at trial by not objecting when it was reiterated in closing arguments.

3.    TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO SECURE EXPERT TESTIMONY TO AID DEFENSE AT TRIAL, AND CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.

Trial counsel filed a motion for funds to hire an expert for the defense, and the trial judge denied the motion. However, trial counsel failed to pursue the issue to the higher courts by making a writ application to the appellate court. Trial counsel's failure to ensure the defense had an expert to rebut the State's expert resulted in prejudice to the Petitioner at trial.

This prejudice is shown by the fact that the State introduced belated exculpatory evidence, and the fact that the defense had no expert to rebut the State's evidence. Further, the fact that trial counsel stated to the court that if he would have known of this evidence he would have been more adamant about securing an expert for the defense, and then still failed at this point to properly motion the court for funds for an expert, and take writs to the appellate court if necessary, shows ineffective assistance of counsel.

Petitioner contends that his trial counsel, Ramiro Orozco, was ineffective assistance of counsel at trial for failing to secure expert testimony to aid the defense. An expert would have given trial counsel the opportunity to fully develop and address all issues raised at trial concerning: 1) expert opinion on the issue of lack of injury or physical evidence; 2) expert opinion on belated discovery evidence; 3) inadmissible expert opinion on psychological evidence given at trial; and 4) expert opinion on other reasonable hypotheses of the incident.

Trial counsel, Mr. Orozco, told the court:

14

> I'm traveling, Your Honor. I don't have time to sit here - - unlike the State,
> Your Honor, I don't have the luxury of staff personnel having had this one case.
> I'm a private practice attorney from out of state coming and handling several
> cases. I have a federal sentencing on Thursday that I was expecting to be able
> to go to.

(Appendix F, p. 323).

Trial counsel further told the court:

> Mr. Orozco:          Your Honor, I have a federal sentencing at 10:00, I
> believe 9:00 or 10:00 a.m. on Thursday. I could be here by 1:00 and that would
> probably give my associate and I more time to review and then at that point I
> don't have that issue pending and this is my last trial and court case that I'll be
> practicing.
>
> The Court:           What? Are you retiring?
>
> Mr. Orozco:          I'm not. I'm going to be a CEO construction - - I was
> supposed to be a CEO of a construction company on Thursday ay 11:00. Now
> it's getting pushed possibly later.

(Appendix F, p. 323).

An expert to testify for the defense at trial would have effectively rebutted the prejudicial assumptions erroneously elicited by the State through their expert. The State's theory of the case was only that — a theory. This theory should have been subjected to rebuttal, especially through the use of defense expert testimony, which is Petitioner's right that was neither utilized, nor honored by his trial counsel. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), quoting *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

Where the prosecution experts were given leeway to testify, the Petitioner's expert would have been allowed to testify as well, had Petitioner's attorney called for one. See, *United States v. Riddle,* 103 F.3d 423 (5th Cir. 1997); *Pavel v. Hollins,* 261 F.3d 210 (2nd Cir. 2001). And see, *United States v. Lueben,* 812 F.2d 179 (5th Cir. 1987), where the *Lueben* Court held it to be reversible error for the trial

court to disallow a defendant's rights to due process, and to offer witnesses / rebuttal evidence. Clearly, Petitioner's counsel was ineffective assistance of counsel for failing to do so.

Petitioner asserts that it cannot be a "trial strategy" to completely disregard this area of defense, especially in light of the fact that expert testimony encompassed several areas of expertise throughout the trial as enumerated above. A "strategic" decision is a decision "that . . . is expected . . . to yield some benefit or avoid some harm to the defense." *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999).

Petitioner contends that the only harm avoided by his trial counsel's failure to utilize expert testimony was to the prosecution. The prosecution also received the benefit of prejudice to the Petitioner caused by his trial counsel's errors.

Under the Sixth Amendment, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Lindstadt v. Keane*, 239 F.3d 191, 200 (2nd Cir. 2001), quoting *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. 2052.

An expert was essential to the defense in order to relate the Petitioner's version of events at trial as the more probable scenario. Viewing the evidence in light of both the State's theory versus the Petitioner's may have caused a reasonable finder of fact to believe that Petitioner's version of events was the most probable, and realistic version according to the facts and evidence. *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005).

Of course, an expert to further impeach the alleged victim's inconsistent story would have called into question her veracity, as well as effectively rebutting the State's experts. Plus, exposing a more logical scenario - a more reasonable hypothesis - to the judge would have undermined the State's theory, as well as the State's whole case-in-chief.

Obviously, expert testimony in this regard was a necessary defense, and trial counsel was completely inert regarding these critical issues. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

16

4.     TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT AND REQUIRE THE TRIAL COURT TO CONSIDER ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

Since this case received a judge only trial, the finder of fact in this case was a trained jurist. Therefore, considerations of constitutional due process and a fair trial were not honored by the judge in this case, and prejudiced Petitioner at his trial. United States Constitution, Amendments 5 and 14; Louisiana Constitution, Article 1, §§ 2 and 16.

While the credibility of a witness is a matter for the finder of fact, once impeached, that witness's testimony becomes suspect under the law and must be corroborated in order to be convincing evidence of guilt or innocence. This is especially true in a swearing contest, where the credibility of the witnesses on both sides is paramount to the outcome of the case.

This case was first reported on April 06, 2015 to the police who were told that Petitioner masturbated and ejaculated on the alleged victim's buttocks. (Appendix H). Between April 06, 2015 and April 15, 2015, the alleged victim was taken to a clinic for physical examination by nurse Ann Troy, and had video taken at the CAC by Jo Beth Rickels. (Appendix H, p. 161). Nurse Ann Troy admitted at trial that the alleged victim told her that;

> Q.     And actually when she spoke to you, she stated that there was anal touching but there was not penetration, correct?
> A.     It is correct that she did not give me the word in. She told me it was between her buttocks and it was wet.

(Appendix G).

As to CAC video, the alleged victim stated that she told the truth in the video.

> Q.     Was it accurate from what you told Jo Beth Rickels?
> A.     Yes.

17

(Appendix H, pp. 163-164).

The alleged victim then stated that as to the CAC video, "I told them everything." (Appendix H, p. 164).

The alleged victim testified that Petitioner held her mostly with one hand, but would sometimes use both if he moved her where he wanted her. She then stated, "Oh, I knew it was his penis because I could feel him moving with his hand." (Appendix H, p. 186). She testified that in her taped video interview she never mentioned being anally penetrated, (Appendix H, p. 187), and previously testified at trial that:

> Q.   What do you mean by that?
> A.   He masturbated.
> Q.   What was the icky?
> A.   Cum.
> Q.   I'm sorry. I couldn't hear you.
> A.   Cum.
> Q.   Would he ejaculate on you?
> A.   Yes.
> Q.   And where would he ejaculate?
> A.   On my butt.
> Q.   On your butt, you said?
> A.   Yes.

(Appendix H, p. 167).

* * * * * * * * * * * * * *

> Q.   What would he do?
> A.   He would do the same thing. Touch me with his hand.
> Breast, and my butt. Touch me with his penis.

(Appendix H, p. 169).

This shows that the case was originally reported as Petitioner masturbating on the alleged victims buttocks. However, some 3 years later, the allegations were changed to include there was penetration of the alleged victim's anus. The State originally filed a Bill of Information charging

aggravated crime against nature. (Appendix D). After the subsequent addition of penetration, the State filed a superseding Indictment charging aggravated rape. (Appendix C).

Petitioner contends that the alleged victim was coached into adding the penetration allegations, and that the change in alleged conduct is impeached by the fact that Ms. Earniesha Lott, who the alleged victim went to for counseling, "helped" the alleged victim to write about the incidents and would "jot down" notes for her. (Appendix H, p. 174).

At trial, Ms. Lott testified that the new allegation of penetration was reported to her, and said the alleged victim's words were "put his thing in her butt," and explained that "thing" was his penis. (Appendix E, p. 242). Ms. Lott also testified that the sessions were not recorded:

> Q.    So there's no, nothing we can review to see if there was any suggestive terminology used, correct?
> A.    When you say recorded, audio?
> Q.    Audio.
> A.    No. I don't have any audio.
> Q.    They were just personal notes?
> A.    Yes.
> Q.    And it was just you and her dialoging together?
> A.    Yes.
> Q.    Using a certain methodology process, correct?
> A.    Yes.

(Appendix E, p. 245).

Ms. Lott was working at the Hope House, but is now in private practice in St. Tammany Parish. (Appendix E, p. 237).

Prosecutors in St. Tammany Parish are known to do a "little brainwashing" to win a case. Lt. Hermann of the St. Tammany Parish Sheriff's Office told the story of one St. Tammany Parish prosecutor, Mr. Hale, doing just that. *Burge v. St. Tammany Parish*, 187 F.3d 452, 461 (5th Cir. 1999): "According to Lt. Hermann, when he asked Hale how he had gotten Glenda Frierson to lie on the

witness stand, Hale told him, 'over a period of time there is a little brainwashing, you tell them the story of what happened, and what you need to win a case in court and they begin to believe it.'"

This would be consistent with the changed story shown in this case. Trial counsel should have objected and pointed to the irreconcilable contradictions and impeachment of the alleged victim's credibility, which should have included the argument that her testimony, standing alone, cannot sustain a conviction. Impeached testimony, as a general rule, cannot stand alone to convict. *State v. Chism,* 591 So.2d 383, 386 (La.App. 2 Cir. 1991), citing *State v. Laprime,* 437 So.2d 1124 (La. 1983); *State v. Lott,* 535 So.2d 963 (La.App. 2 Cir. 1988).

The U.S. Fifth Circuit Court of Appeals recognizes the distinction between strategic judgment calls and plain omissions; *Loyd v. Whitley,* 977 F.2d 149, 158 (5th Cir. 1992), and has further stated that the court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999).

Getting someone to believe a story is not the same thing as bringing supporting evidence to prove the truth of the story. Simply put, it does not boil down to what you can get the judge or jury to believe, unless that belief is based upon proof beyond a reasonable doubt.

The record shows that the trial testimony of the State's eyewitnesses is impeached testimony, therefore, it is clearly insufficient, standing alone, to sustain this conviction. The record also shows that Petitioner's trial counsel failed to raise the issue that impeached testimony, standing alone, is insufficient to uphold a conviction.

In *State v. Kennedy,* 803 So.2d 916 (La. 2001), in Justice Traylor's dissenting opinion, it is stated that the Louisiana Supreme Court has found that, "The victim's testimony, standing alone, can prove that the act occurred, . . ." but is qualified in FN9, "However, we have also ruled post-trial that impeached testimony of a witness, standing alone, cannot prove the offense."

20

In the instant case, the judge's decision to convict was based "primarily" on the issue of credibility, and the judge used impeached testimony of the alleged victim, standing alone, in order to convict without objection from trial counsel.

Petitioner was deprived of his right to the effective assistance of counsel guaranteed him by both the United States Constitution, Amendments 6 and 14; and the Louisiana Constitution, Article 1, § 13. Therefore, Petitioner is entitled to Post Conviction Relief.

5.    TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO CONSULT PETITIONER ON HIS RIGHT TO A JURY TRIAL AND FORCED PETITIONER TO GO TO TRIAL WITH A JUDGE INSTEAD OF A JURY.

Petitioner contends that his trial counsel took away his choice to assert his right to a jury trial, and told him that he had to go to a judge trial or else he would pick up his stuff and go back home to Mississippi, and leave the Petitioner on his own. Therefore, Petitioner was coerced into accepting a judge trial, and did not give a knowing and intelligent waiver of his right to a jury trial. This violated Petitioner's rights under the United States Constitution, Amendments 5, 6 and 14, and the Louisiana Constitution, Article 1, §§ 2, 13, and 17.

Petitioner's trial counsel simply told Petitioner what to do and when to do it, and if Petitioner did not go along with this then his counsel would leave him to the wolves. Petitioner did not make any decisions in his case, and was told by trial counsel that he was incompetent to do so because of the language barrier, his defective hearing, and Petitioner's ignorance of the law and court procedure (which trial counsel never attempted to explained to him). Petitioner's trial counsel never explained any of his rights to him, and only told him "This is what you must do, or I can not help you." Petitioner was not given the option to decide anything. This is especially true concerning his right to a jury trial.

It was not until trial counsel spoke to the judge at trial that Petitioner found out that this trial

was trial counsel's last case, as he was changing professions. This goes to show why trial counsel would want to have a nice and quick judge trial, and refused to take writs to the appellate court when that action became appropriate and necessary.

The instant Petitioner does not read, write, or speak the English language. There was a Spanish interpreter at trial, but the interpreter's translations were often incorrect or not understandable, especially to a person with hearing problems. Even trial counsel complained about the interpreter, but did not bring the problem to the attention of the court, or otherwise attempt to get a competent interpreter.

Further, since trial counsel felt that Petitioner was incompetent to assist him in the defense, then trial counsel also rendered ineffective assistance of counsel for failing to inform the court that Petitioner was incompetent to aid in his own defense.

The Louisiana Supreme Court has made clear that "an accused's ability to assist in his defense" is a primary concern in a competency determination. *State v. Bennett*, 345 So. 2d 1129, 1138 (La. 1977). Such factors as whether the defendant is able "to recall and relate facts pertaining to his actions" and "whether he has the ability to make simple decisions in response to well-explained strategy" were set out by the Court as particularly important. *Id.*

The United States Supreme Court has also stated that "an inability to assist counsel can, in and of itself, constitute probative evidence of incompetence." *Medina v. California*, 505 U.S. 437, 112 S. Ct. 2572, 2580, 120 L. Ed. 2d 353 (1992).

> The Sixth Amendment guarantees the accused in a criminal proceeding the right to have "the Assistance of Counsel for his defence." U.S. Const. amend. VI. It "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." 422 U.S. at 819-20, 95 S.Ct.

22

2525 (footnote omitted). Implicit in this right is the accused's authority "to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).

*State v. Horn*, 2016-0559, 251 So.3d 1069, 1073 (La. 2018); see also *Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 560, 160 L.Ed.2d 565 (2004).

Petitioner's trial counsel was ineffective assistance of counsel for failing to give him a choice of whether to assert his right to a jury trial. Instead, Petitioner was coerced into a judge trial, or else. Therefore, Petitioner did not give a knowing and intelligent waiver of his right to a jury trial. Further, trial counsel's failure to "consult" with Petitioner because of his "language barrier, hearing problem, and complete ignorance of the law and court procedure" so that he was incompetent to assist counsel in his defense, rather than counsel making all decisions about the defense, constitutes ineffective assistance of counsel, as well as informing the court.

6.     PETITIONER'S TRIAL COUNSEL WAS MADE AWARE THAT PETITIONER HAD HEARING PROBLEMS AND USED A HEARING AID, AND COUNSEL FAILED TO MAKE ACCOMMODATIONS AT TRIAL.

Along with the preceding argument, where counsel was aware of Petitioner's hearing problem and use of a hearing aid, but counsel only considered these problems to be a form of incompetence on Petitioner's part, failure to ask the court for accommodations is ineffective assistance of counsel. Had counsel asked for such accommodations to his hearing impaired client, the court would have done so in accordance with the Americans with Disabilities Act.

Discrimination in this area goes along with Disability Discrimination due to Petitioner's inability to speak, read, or understand the English language, in violation of federal law, (specifically the

23

Rehabilitation Act of 1973 and the Americans with Disabilities Act).

Petitioner's trial counsel clearly rendered ineffective assistance of counsel regarding Petitioner's disabilities.

## 7. TRIAL COUNSEL FAILED TO ASK FOR A REPLACEMENT TRANSLATOR, EVEN THOUGH COUNSEL SPOKE SPANISH AND COULD NOT UNDERSTAND THE TRANSLATOR AT TRIAL.

As previously stated, the instant Petitioner does not read, write, or speak the English language. There was a Spanish interpreter at trial, but the interpreter's translations were often incorrect or not understandable, especially to a person with hearing problems. Even trial counsel complained about the interpreter, but did not bring the problem to the attention of the court, or otherwise attempt to get a competent interpreter.

Petitioner contends that this is itself an instance of ineffective assistance of counsel. "While this Court must look to the totality of the trial to assess counsel's performance, 'Sometimes a single error is so substantial that it alone causes the attorney's performance to fall below the Sixth Amendment standard.'" *Nero v. Blackburn*, 597 F.2d 991, 994 (5th Cir. 1979).

## CONCLUSION

Wherefore, Petitioner submits the instant Petition for Writ of Habeas Corpus by a Person in State Custody and a Memorandum in Support attacking his unlawful custody.

Petitioner maintains that ineffective assistance of counsel, along with errors of the trial judge and state courts, deprived Petitioner of his rights to effective assistance of counsel, due process, equal protection of the laws, compulsory process for obtaining witnesses in his favor, and access to the courts. United States Constitution, Amendments 5, 6, and 14, Louisiana Constitution, Article 1, §§ 2, 3, 13, 16, and 22.

Petitioner asserts viable claims, of which he has pointed to sufficient record evidence, and is entitled to Habeas Corpus Relief. After full review of the record and pleadings contained herein, this Honorable Court should grant Petitioner the requested Habeas Corpus Relief of an Order of Acquittal, or, at least, ordering Petitioner's case remanded for a new trial. Alternatively, this case should be remanded for an Evidentiary Hearing.

Additionally, Petitioner asks that this petition be subject to the grounds of accumulation of errors as the basis for a new trial. *Latiolais v. Whitley*, 93 F.3d 205 (5th Cir. 1996).

Respectfully submitted, *pro se*, this 19th day of September, 2022.

Victor Galan
Victor Galan #732647
M.P. - Spruce 1
LA State Prison
Angola, LA 70712

25

VERIFICATION / CERTIFICATE OF SERVICE

I, Victor Galan, the aforementioned Petitioner, do hereby attest and affirm that the information contained herein is true to the best of my knowledge and belief. Further, I verify that all allegations in the foregoing are those of Victor Galan.

Additionally, I hereby certify that a copy of the foregoing has this date been placed in the designated mailbox at this institution to be scanned and electronically filed in this Court, and a copy has been sent, via U.S. Mail, postage prepaid and properly addressed to:

Warren Montgomery, District Attorney
22nd Judicial District, Justice Center
701 N. Columbia St.
Covington, LA 70433

Done and signed this 19th day of September, 2022, at Angola, Louisiana.

Victor Galan #732647
M.P. - Spruce 1
LA State Prison
Angola, LA 70712

26