**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**VICTOR GALAN**                                                                 **CIVIL ACTION**

**VERSUS**                                                                           **NO. 22-3420**

**TIM HOOPER, WARDEN**                                            **SECTION: "A"(5)**

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

        Petitioner, Victor Galan, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In 2015, he was charged by bill of information with one count of aggravated crime against nature of a person under the age of 13.[1]    In 2017, the State filed a superseding bill of indictment charging him with one count of aggravated rape of a person under 13 years of age.[2]    Following a bench trial, in April 2018, he was found

---

[1]  State Rec., Vol. 1 of 7, Bill of Information, Parish of St. Tammany.

[2]  State Rec., Vol. 1 of 7, Superseding Indictment, Parish of St. Tammany.

guilty as charged of aggravated rape.[3]   His motion for a new trial was denied.   The defense waived sentencing delays and he was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.[4]

On direct appeal, Galan asserted in a counseled assignment of error that the evidence was insufficient to support the conviction.   He also filed a *pro se* brief arguing that the trial court erred in denying his motion for a mistrial based upon the State's late disclosure of various documents.   On May 14, 2019, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[5]   On January 22, 2020, the Louisiana Supreme Court denied his application for writ of certiorari.[6]

On or about April 5, 2021, Galan submitted his application for post-conviction relief to the state district court.[7]   In that application, he asserted that trial counsel rendered ineffective assistance because he failed to: (1) re-urge a motion for mistrial when trial resumed after a two-day stay to allow defense counsel to review late-disclosed discovery provided by the State; (2) object to inadmissible hearsay and testimony by counselor

---

[3]   State Rec., Vol. 1 of 7, Minute Entry, 4/5/2018.

[4]   State Rec., Vol. 1 of 7, Minute Entry, 4/5/2018; State Rec., Vol 2 of 7, Sentencing Transcript, p. 407.

[5]   *State v. Galan*, 18-KA-1481 (La. App. 1 Cir. 5/14/19), 277 So.3d 365; State Rec., Vol. 4 of 7 (Tab 1).

[6]   *State v. Galan*, 2019-KO-01027 (La. 2020), 291 So.3d 1042; State Rec., Vol. 4 of 7 (Tab 3).

[7]   State Rec., Vol. 5 of 7 (Tab 1), Uniform Application for Post-Conviction Relief and Memorandum in Support.

Earniesha Lott and forensic nurse, Ann Troy, regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS"), specifically delayed disclosure; (3) secure expert testimony; (4) object and require the trial court to consider the issue of the victim's impeached testimony, standing alone, being unconstitutionally used to obtain the conviction; (5) consult the petitioner on his right to a jury trial; (6) make accommodations at trial for petitioner's hearing problems; and (7) ask for a replacement Spanish translator.    In December 2021, the state district court issued a written judgment with incorporated reasons denying relief.[8] On March 14, 2022, the court of appeal denied Galan's related supervisory writ application without assigning reasons.[9]    On September 7, 2022, the Louisiana Supreme Court denied relief, stating only that he failed to show that he received ineffective assistance of counsel under *Strickland*, and he failed to satisfy his burden of proof as to his remaining claims.[10]

In September 2022, Galan submitted this federal application for habeas corpus relief.[11]    He raised the same seven claims for relief as those advanced in his state court post-conviction proceedings alleging ineffective assistance of trial counsel.[12]    The State does not

---

[8]  State Rec., Vol. 5 of 7 (Tab 2), Judgment with incorporated reasons denying PCR.

[9]  *State v. Galan*, 2022 KW 0021, 2022 WL 766784 (La. App. 1 Cir. 3/14/22); State Rec., Vol. 6 of 7.

[10]  *State v. Galan*, 2022-KH-00544 (La. 2022), 345 So.3d 417, State Rec., Vol. 7 of 7.

[11]  Rec. Docs. 1, 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[12]  The Court has construed some claims liberally to include the two claims raised on direct appeal even though arguably he raises only ineffective-assistance-of-counsel claims. These will be addressed in this Report and Recommendation as part of IAC claims 1 and 4. Portions of Galan's attached exhibits contained identifying personal information about the minor victim and her family members.    The exhibits were ordered to be sealed due to

challenge timeliness or assert that the claims are unexhausted or procedurally barred.[13] The State argues that Galan is not entitled to relief on the merits.    Galan did not file a reply to the State's response.

## Facts

On direct appeal, the Louisiana First Circuit briefly summarized the facts adduced at trial:

> The victim, E.B.R.M.,[14]  is the biological daughter of the defendant, and in 2014 lived with the defendant, her mother (who was married to the defendant), and her two younger sisters (also children of the defendant and the victim's mother). At trial, E.B.R.M. testified that following her eleventh birthday, the defendant began touching her breasts and buttocks, then began masturbating on her and sodomizing her, sometimes while she was in bed with her sisters. The abuse continued over a six-month period and stopped when E.B.R.M.'s sisters told their mother what was happening, E.B.R.M. confirmed their accounts, and E.B.R.M.'s mother reported the abuse to the police. The defendant denied raping or inappropriately touching E.B.R.M., claiming his daughters are illegal immigrants and were coerced into making these accusations against him to obtain a "U-visa," which is available to certain crime victims and their families.[15]

*Galan*, 2018-1481, 277 So.3d at 367-68 (footnotes in original).

---

privacy and confidentiality concerns.    Rec. Doc. 10.

[13]   Rec. Doc. 14, State's Response, p. 7.

[14]   The victim and her sister are referenced by their initials. *See* La. R.S. 46:1844W.

[15]   Pursuant to the Victims of Trafficking and Violence Protection Act of 2000, a "U-visa" can be granted to victims of certain crimes who assist United States law enforcement officials in investigating or prosecuting those crimes. *See* 8 U.S.C.A. § 1101(a)(15)(U); *Ordonez Orosco v. Napolitano*, 598 F.3d 222, 224 (5th Cir.), *cert. denied*, 562 U.S. 863, 131 S.Ct. 389, 178 L.Ed.2d 87 (2010). The "U-visa" is a nonimmigrant visa classification that provides legal status to petitioners and qualifying family members to apply for work authorization and remain in the United States. *See* 8 U.S.C.A. § 1101(a)(15)(U); *Calderon-Ramirez v. McCament*, 877 F.3d 272, 274 (7th Cir. 2017).

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.     A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."     28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").     With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."     28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."     *Bell v. Cone*, 535 U.S. 685, 694 (2002).     A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States

Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id*. (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

**Analysis**

*A. Ineffective Assistance of Trial Counsel*

Galan alleges seven instances of ineffective assistance of trial counsel.[16]   He asserted the same seven claims during state post-conviction relief proceedings, and the state district court issued a judgment denying the claims with detailed written reasons.   The state appellate courts likewise denied relief without citing additional reasons.   Because such claims present mixed questions of law and fact, Galan is entitled to federal habeas relief only if he shows that the state-court decision denying the claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).   For the following reasons, he has not made that showing.

The state courts analyzed the claims under the proper controlling framework, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   Under *Strickland*, a petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.   *Id.* at 697.   To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.   *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   When assessing whether counsel's performance was deficient, a federal court must always be mindful that

---

[16]   Rec. Doc. 3-1, p. 12.

"*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."   *Harrington v. Richter*, 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Therefore, "[t]o establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness."   *Id.* at 104 (quotation marks omitted).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.   In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*   "A reasonable probability means a " 'substantial,' not just 'conceivable,' likelihood of a different result."   *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112, 131 S.Ct. 770).   If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.   *Strickland*, 466 U.S. at 697.

The burden is even higher and more demanding on federal habeas review from a judgment on the merits issued by the state courts.   As the Supreme Court has explained, when an ineffective assistance claim is presented in a federal habeas petition:

> [T]he question is whether [the state court] decision involved an "unreasonable application of " this Court's precedent. To meet that standard, a prisoner must show far more than that the state court's decision was "merely wrong" or "even clear error." *Virginia v. LeBlanc*, 582 U.S. ––––, ––––, 137 S.Ct. 1726, 1728, 198 L.Ed.2d 186 (2017) (per curiam) (internal quotation marks omitted). The prisoner must show that the state court's decision is so obviously wrong that its error lies "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103, 131 S.Ct. 770. Congress "meant" this

standard to be "difficult to meet." *Id.*, at 102, 131 S.Ct. 770.

*Shinn v. Kayer*, 141 S.Ct. 517, 523 (2020).   The overriding question in a federal habeas corpus proceeding is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."   *Richter*, 562 U.S. at 105, 131 S.Ct. 770.   The federal court must accord the state-court decision "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Id.* at 101, 131 S.Ct. 770; *see also id.* at 105, 131 S.Ct. 770 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.").   As a result, in effect, the federal court must "afford *both* the state court *and* the defense attorney the benefit of the doubt."   *Woods v. Etherton*, 578 U.S. 113, 117, 136 S.Ct. 1149, 194 L.Ed.2d 333 (2016) (emphasis added; quotation marks omitted).

   *1.   Motion for Mistrial*

   First, Galan asserts that trial counsel acted improperly when the trial court denied the motion for mistrial.   He claims that counsel should have immediately sought supervisory appellate review to challenge the erroneous ruling, or, at the very least, reasserted the motion for mistrial when trial resumed.

   The defense moved for a mistrial on the second day of trial after the State belatedly disclosed documents related to the victim's siblings, one of whom had already testified as a prosecution witness (F.G.), and the other of whom (C.G.), the State did not intend to call as a witness.   The records consisted of the examinations and interviews conducted with the victim's siblings, which documented that no sexual abuse occurred involving them, and contained a different drawing than the one already discussed at trial during F.G.'s testimony

(*i.e.*, the picture of the bed described in F.G.'s video interview with JoBeth Rickels at the Child Advocacy Center).[17]   After a lengthy hearing, during which the trial court several times leaned toward granting a mistrial, the motion was ultimately denied, and defense counsel was given additional time to review the discovery.   The trial court encouraged defense counsel, if he felt it necessary, to seek supervisory writs and challenge the ruling, or after reviewing the evidence, to reassert the motion for mistrial when trial resumed.   Trial resumed two days later, but defense counsel took neither course of action.   Trial resumed without further objection by the defense and the documents were offered into evidence as a proffer by the State.[18]

Although the ruling denying the motion for mistrial was not appealed during trial, Galan did challenge it unsuccessfully on direct appeal.   In rejecting the claim, the court of appeal recounted the circumstances surrounding the mistrial motion and found no abuse of discretion.   The appellate court explained:

> The defendant additionally contends the trial court erred in denying his motion for mistrial based on the state's late disclosure of various documents, including what defense counsel described as a second drawing made by E.B.R.M.'s sister, F.G., during her interview at the Child Advocacy Center. According to the arguments presented to the trial court, the state provided the documents to the defense after completion of the first day of trial, claiming to have just received them. The motion for mistrial was made the following day.

---

[17]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 271-76.   *See also*, F.G. testimony (cross-examination), pp. 215-16.

[18]   State Rec., Vol. 2 of 7, Trial Transcript, p. 332.   The entire argument on the defense motion for mistrial and court ruling may be found at State Rec., Vol. 2 of 7, Trial Transcript pp. 265-326. At the end of the hearing on the motion for mistrial, the State reiterated that it did not intend to introduce the newly disclosed records at trial through Nurse Troy, the State's sole remaining witness. Instead, the State would rely only on the victim's records, which the State had provided the defense before trial. *Id.* at 322.

The defense argued it was prejudiced because it was unable to cross examine the state's witnesses, specifically F.G., who by that time had been released, to show inconsistencies in their testimony. The defense also argued its trial strategy would have changed had it received the documents earlier, claiming it would have been more adamant in seeking funding for experts. The state contended it provided open file discovery and turned over the documents as soon as they were received, noting the documents did not relate to the victim and contained no *Brady* information. After extensive discussion with counsel for the parties, the trial court denied the motion for mistrial, but recessed the trial so the defense could review the documents. The trial continued two days later. On appeal, the defendant argues his conviction should be reversed because, after receipt of the "surprise discovery material," his counsel did not have time to prepare a defense or strategy.

Louisiana Code of Criminal Procedure article 729.5 prescribes sanctions for failure to honor a discovery right, leaving it to the trial court's discretion whether a continuance, mistrial, or other order short of dismissal is warranted. Although a mistrial is among the available sanctions, it is a drastic remedy. Except where it is mandatory, a mistrial is warranted only when a trial court error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. *State v. Andrews*, 19-0068 (La. 1/14/19), 260 So.3d 1202, 1202 (*per curiam*).

We find the trial court did not abuse its discretion in denying the motion for mistrial. The trial court allowed defense counsel time to review the evidence, indicating it would recess the trial for months if necessary.[19]  Thereafter, the defendant had the opportunity to recall the state's witnesses and impeach their testimony with the new evidence. *See Andrews*, 260 So.3d at 1202. Considering this, the defendant was not deprived of the opportunity to attempt to use the evidence. The defendant has not shown he was prejudiced by the trial court's election to handle the tardy disclosure of the evidence by an alternative other than granting a mistrial. *See State v. Arnaud*, 412 So.2d 1013, 1017-18 (La. 1982) (finding the defendant was not prejudiced and there was no constitutional violation of his right to a fair trial where the trial court proceeded with trial despite the fact the state tardily provided the defense with a medical report).

---

[19]  The trial court additionally stated that when the trial resumed the defendant could re-urge the motion for mistrial and attempt to articulate the prejudice suffered by the late disclosure; however, the defendant did not re-urge the motion when the trial resumed.

This assignment of error is also without merit.[20]

The Louisiana Supreme Court likewise denied relief.

Subsequently, on post-conviction review, Galan altered the claim to assert that trial counsel rendered ineffective assistance with respect to the mistrial.    He claimed that counsel should have challenged the denial of a mistrial through a supervisory writ to the court of appeal or reasserted the motion for a mistrial once trial resumed.    The state district court rejected the claim because Galan failed to show either deficient performance or prejudice.    The appellate courts denied relief without citing additional reasons.

Galan reasserts his claim of ineffective assistance of counsel on federal habeas review. He alleges that counsel's omissions denied him the ability to prepare a defense or impeach the State's witnesses, allowed the State a second bite of the apple by either recalling a witness to introduce the evidence or cross-examining the witness if called by the defense, and gave the State an advantage to discuss the testimony with its witness before being recalled to the stand.    Galan further speculates that the appellate court on supervisory review would have overturned the ruling or at least precluded admission of the belated evidence.

In determining whether a mistrial was warranted, the trial court determined that the problem was whether the defense was prejudiced, not prosecutorial misconduct.    The trial court flatly rejected the defense's argument that any misconduct occurred.    Despite the defense allegation that "the District Attorney's office systematically provided untimely discovery on several occasions, on to include the eve of the trial on two occasions and during

---

[20] *Galan*, 277 So.3d at 369-70 (footnote in original).

this trial of yesterday after adjournment and omitted key pages in discovery to include the picture that was drawn by the witness F.G.,"[21] the trial court repeatedly stated that it found <u>no</u> prosecutorial misconduct.[22]   The State immediately shared the records with defense counsel upon receipt.   Nonetheless, the court expressed concern over the newly disclosed evidence just given to defense counsel, particularly if the information would have been helpful in the defense's preparation for trial, would have changed their strategy, or they could have used it for impeachment purposes.   One difficulty, however, was that the court did not know precisely what the discovery included, and could not review the evidence because it was a bench trial and the evidence was not appropriately before the court.[23]   The court struggled with a decision, commenting it was "shooting in the dark here," not being able to see the records.[24]   The trial court initially leaned toward granting a mistrial and having the defense take a writ to the court of appeal to consider the propriety of the ruling *with* the proffered records, which the appellate court would be able to review independently. Ultimately, as more details were revealed about the evidence and the trial court parsed out the potential prejudice, it became clear that the problem perhaps could be remedied by continuing the trial proceedings to give defense counsel time to review the newly produced records.   Again, the records did not pertain to the victim.   The 40 or so pages of medical

---

[21]   State Rec., Vol. 2 of 7, Trial Transcript, p. 266.

[22]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 285, 288.

[23]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 284-89.

[24]   State Rec., Vol. 2 of 7, Trial Transcript, p. 291.

records documented only her siblings' examination and interviews.   The controversy appeared to involve only F.G., based on a different drawing of a bed, and alleged inconsistencies between her interview statements and her trial testimony.[25]

The trial court addressed the defense's claims of potential prejudice, which included their claimed inability to retain a defense expert witness and procedural difficulty in examining F.G. now about the new evidence since she had already testified in the State's case-in-chief and been cross-examined by the defense.[26]   In discussing the matter, defense counsel admitted the new evidence would not have changed the defense strategy per se.[27] He maintained that he would have pressed harder for funding for a defense expert witness to review the records in the case to explain the inconsistencies.   However, counsel could not articulate to the court specifically what the expert would need to review or what information the defense needed the expert to find.   Additionally, the State noted, and the trial court agreed, it was unlikely a different ruling on expert funding would ensue simply because of new records containing a drawing by F.G. or the suggestion of possible inconsistencies in F.G.'s testimony, given that the court had already rejected the defense request for funding to retain an expert to review the *victim's* records.[28]   As for further

---

[25]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 274, 309-12.

[26]  The State had not yet rested its case.   When trial resumed, the State planned to call forensic nurse practitioner, Ann Troy, who conducted the examination and interviews with the victim and her siblings at the Audrey Hepburn Care Center.

[27]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 281-82.

[28]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 293-94.

examination of witnesses, the trial court felt that the defense would not be prejudiced by the untimeliness of the disclosure since counsel would be given ample time to review the evidence and could still use the evidence to question and impeach the witnesses, whom the State agreed to recall if necessary, giving the defense the opportunity to cross-examine them as adverse witnesses.    The trial court believed it could fairly judge any additional witness testimony to determine if the witness was coached or created a story earlier based on what the new records revealed.    Defense counsel had ample time to review the 40 or so record pages and embrace the opportunity to take writs, or return and question the witness, reassert the motion for a mistrial, or renew the motion for expert funding with specifics on why the expert would be necessary and what opinion the expert would give.    Trial reconvened and the evidence was proffered by the State with no further objection by defense counsel after he had thoroughly reviewed the new evidence.    Defense counsel questioned Nurse Troy, who examined and interviewed F.G., about the drawing in her records, and the drawing was admitted as a defense exhibit.[29]

Here, the state court reasonably determined there was no showing that trial counsel's performance was deficient or that Galan was prejudiced when trial counsel failed to reassert the motion for mistrial or take writs to the court of appeal from the denial of the motion for mistrial stemming from the State's belated disclosure.    The issue was not one of misconduct but of potential prejudice.    And there was no indication that the prejudice was too substantial to overcome by anything other than the drastic remedy of granting a mistrial.

---

[29] State Rec., Vol. 2 of 7, Trial Transcript, pp. 347-52.

Instead, the trial court gave defense counsel ample time to review the medical records and take further action if necessary. Although counsel could have moved for a mistrial again after reviewing the records, he was not ineffective for choosing not to do so. The trial court had already carefully considered whether a mistrial was warranted and expressed that the prejudicial effect of the late disclosure was mitigated by the extra time given through trial recess, defense counsel's retained ability to cross-examine recalled witnesses at his discretion when trial resumed, and the fact that it was a bench trial with an experienced trier of fact to weigh the evidence in its entirety. Only the records pertaining to F.G. were even relevant because the victim's other sibling, C.G., was not a witness at trial. Defense counsel thoroughly cross-examined F.G. about her recollection of events involving the victim and her father. Counsel questioned F.G. about her drawing of a bed that was mentioned in the video interview introduced as evidence and F.G. commented it was not an accurate picture of the room.[30] Counsel also questioned Nurse Troy about F.G.'s drawing made while giving her incident history, and she commented that it did not even represent a particular time frame or event because F.G. was young and she was not asked to draw it in that context.[31] Given the fact that the motion had already been denied, trial had been recessed to allow defense counsel ample time for a thorough review of F.G.'s records and opportunity to further question F.G., and the minimal impact the records had on F.G.'s account, the state-court decision finding no deficient performance or prejudice in counsel's failure to reassert

---

[30]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 214-16.

[31]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 347-52.

the motion for a mistrial was objectively reasonable.    Counsel is not ineffective for failing to reassert a meritless motion for a mistrial.    *See McKee v. Cain*, No. 10-344, 2010 WL 4366041, at *9 (E.D. La. Sept. 30, 2010), *adopted*, 2010 WL 4362769 (E.D. La. Oct. 25, 2010); *Fields v. Cain*, No. 05-0074, 2007 WL 458208, at *4 and 17 (E.D. La. Feb. 8, 2007).

Furthermore, on direct appeal, the Louisiana First Circuit found no abuse of discretion in the trial court's denial of the motion for a mistrial.    This contradicts Galan's speculation that an earlier writ to the court of appeal would have been successful.    While Galan speculates that trial counsel did not press the issue because he wanted to be done with the trial quicker and move on to a new job he had accepted, the reality is that neither seeking an earlier supervisory writ challenging the ruling denying a mistrial nor reasserting the same motion for a mistrial would have altered the outcome in this case.    This claim of ineffective assistance of counsel does not warrant federal habeas relief.

In an abundance of caution, to the extent the claim may be construed as one alleging that the trial court denied him due process by erroneously denying his motion for a mistrial, the Court notes he fares no better.    The state-court denial of the motion for a mistrial justifies federal habeas corpus relief only if it was "error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause."    *See Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)).    Here, the alternatives to mistrial and safeguards afforded the defense by the trial court ensured a fair trial resulted despite the belated disclosure of evidence.[32]

---

[32] In stating his issues on collateral review, Galan framed the claim as one of ineffective assistance of counsel.    It is unclear from the rulings by the state courts if any framed the claim alternatively as one alleging a due process violation.    The Louisiana

   *2.  Hearsay/Child Sexual Abuse Accommodation Syndrome (CSAAS)*

   Next, Galan contends that defense counsel should have objected to inadmissible hearsay when forensic nurse practitioner Ann Troy and licensed professional counselor Earniesha Lott testified to statements made by the victim concerning Galan sexually abusing her.   He fails to identify the improper hearsay testimony by Lott, citing only generally to the 10 pages spanning her testimony in its entirety.[33]   He identifies one instance of alleged impermissible hearsay by Nurse Troy, but it is actually favorable testimony elicited by *defense counsel* on cross-examination.[34]   He also asserts that counsel should have objected to the alleged improper testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS), which he claimed was elicited to bolster the victim's credibility.   In support, he cites to one objectionable statement by Lott elicited by the prosecutor and only generally references Nurse Troy's testimony.[35]   The state district court found that the statements did not constitute hearsay under Louisiana law, citing Louisiana Code of

---

Supreme Court appeared to address additional claims besides ineffective assistance of counsel and denied relief summarily under Louisiana Code of Criminal Procedure article 930.2.   *State v. Galan*, 2022-544 (La. 2022), 345 So.3d 417.   Regardless, because the claim was raised and exhausted in the state courts on direct appeal, the Court briefly considers it here.

   [33]  Galan merely references his attached Appendix E (Rec. Doc. 3-2, p. 111), which is Lott's testimony in its entirety. Rec. Doc. 3-1, p. 17.

   [34]  Galan cites to Appendix G (Rec. Doc. 3-2, p. 185), which is Nurse Troy's testimony at Trial Transcript pp. 345-46. Defense counsel inquired, "And actually when she spoke to you, she stated that there was anal touching but there was not penetration, correct?" Nurse Troy replied, "It is correct that she did not give me the word, in. She told me it was between her buttocks and it was wet."

   [35]  Rec. Doc. 3-1, pp. 17-18.

Evidence article 803(4), and no improper CSAAS-based testimony was elicited, and therefore, no objection was warranted.   Even assuming *arguendo* that it was improper, the district court found no prejudice, reasoning that any error would have been harmless because their testimony was cumulative to the direct evidence offered through the victim's videotaped statement, her own testimony, and her sibling's testimony.

As the state district court explained, the testimony was not hearsay because it fell within an exception under state evidentiary law.   The state district court cited Louisiana Code of Evidence article 803(4), which provides that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.

La Code Evid. art. 803(4).   In analyzing the claim and finding no deficient performance by counsel in failing to object to inadmissible hearsay, the court relied on Louisiana Supreme Court law as follows:

> The petitioner is correct that "Louisiana subscribes to the general rule that the hearsay exception in La. C.E. art. 803(4) ordinarily does not encompass statements ascribing fault in the cause of the injuries treated."   *State v. Koederitz*, 2014-1526, p. 4 (La. 3/17/15), 166 So.3d 981, 984.   However, the hearsay exception provided by Art. 803(4) has "received particular application in cases of child sexual abuse, including statements of fault, because the legislature has expressed an overriding interest in protecting child victims of sexual abuse by encouraging the admission of reliable hearsay evidence for the trial court to weigh."   *Id*., 2014-1526, p. 5, 166 So. 3d at 985 (internal citations omitted).   Specifically, this hearsay exception "may encompass other instances in which the identity of a perpetrator plays an integral role in medical treatment and diagnosis in connection with that treatment."   *Id.*

In *Koederitz*, the Louisiana Supreme Court cited with approval jurisprudence from other jurisdictions which "reflects the *current* integrated approach to the treatment of domestic violence cases in the medical community." *Id.*, 2014-1526, p. 7, 166 So.3d at 985.   This integrated approach recognizes that "[i]n domestic violence and sexual abuse situations, a declarant's statement disclosing the identity of a closely-related perpetrator is admissible under [Evidence Rule] 803(a)(4) because part of reasonable treatment and therapy is to prevent recurrence and future injury." *Id.*, 2014-1526, p. 6, 166 So.3d at 985, citing with approval *State v. Williams*, 137 Wash. App. 736, 154 P.3d 322, 328.

A review of Ms. Lott's testimony shows the state asked her questions of a factual nature only, as to her treatment of the victim.   Moreover, Ms. Lott was the first person to whom the victim first disclosed the actions which resulted in the superseding indictment of a more serious charge.   The Court finds that her testimony fell within the hearsay exception of Art. 803(4).

Nurse Troy testified as an expert witness.   In fact, the agreed nature of her expertise was sex abuse and delayed disclosure.   Having accepted her expertise, defense counsel could not object to her testimony consistent with that type of information.[36]

The appellate courts likewise denied relief without additional stated reasons.

Galan contends that the exception is inapplicable because neither Troy nor Lott is a physician and neither worked under the direction of a physician.   In support of his argument, he references Authors' Notes to Louisiana Code of Evidence article 803(4).[37]   *See also State v. Ste. Marie*, 801 So.2d 424, 431 (La. App. 4 Cir. 2001) (social worker's testimony about victims' abuse statements to her constituted inadmissible hearsay, but any error in admission was harmless).   The state district court rejected the argument, citing favorably the more *current* integrated approach referenced in *Koederitz* (quoted above), where the

---

[36] State Rec., Vol. 5 of 7 (Tab 2), State District Court Judgment on Post-Conviction with Incorporated Reasons, pp. 4-5.

[37] Rec. Doc. 3-1, pp. 15-16.

Louisiana Supreme Court held that statements made by the victims to medical personnel contained in medical records were non-hearsay under Louisiana Code of Evidence article 803(4).    In *Koederitz*, the Louisiana Supreme Court found that the "trial court erred in excluding the hospital records documenting the victim's initial treatment at Ochsner Hospital, during which she identified her assailant and placed the incident in the context of domestic violence, and the follow-up visit with Dr. Anderson [psychiatrist], during which the victim elaborated on her prior statements and received counseling on ways to change her behavior even as she insisted that she would not report the incident to the police." *Koederitz*, 166 So.3d at 986.

In this case, Nurse Troy explained that she performs the same duties as the doctors at Audrey Hepburn Care Center and has prescriptive authority and can diagnose and treat children independently. [38]    Her responsibilities included taking a personal history and performing the forensic exam on the victim to make referrals for services and order lab work or diagnostics.[39]    Nurse Troy testified that the victim related a clear and detailed history of sexual abuse by her biological father involving penile/anal contact and that her findings were consistent with sexual abuse.[40]    The state district court reasonably determined that her testimony did not constitute objectionable, inadmissible hearsay.    In addition to being accepted as an expert without objection in the precise area in which she offered the

---

[38]   State Rec., Vol. 2 of 7, Trial Transcript, p. 337.    Nurse Ann Troy's testimony is found at pp. 334-53.

[39]   State Rec., Vol. 2 of 7, Trial Transcript, p. 339.

[40]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 342-44.

testimony, her testimony fell within the hearsay exception for medical treatment and diagnosis. *State v. Mangrum*, 2020-0243 (La. App. 1 Cir. 2/22/21), 321 So.3d 986, 1000-03 (2021) (forensic nurse's testimony about statements made by the victim during the examination at CAC was non-hearsay under La. C.E. art. 803(4)); *State v. D.D.*, 2018-0891 (La. App. 4 Cir. 12/27/19), 288 So.3d 808, 846-54 (2019) (finding Nurse Ann Troy's expert testimony and medical records pertaining to the victim admissible as an exception to hearsay under La. C.E. art. 803(4)); *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702 n. 19 (same); *State v. Cotton*, 2016-0081, 2016 WL 5018530, at *2-3 (La. App. 1 Cir. 9/16/16) (same).

Earniesha Lott is not a health care provider, but she provided counseling to the victim for three years in her role as a licensed professional counselor for the Children's Advocacy Center, Hope House.[41]    She testified that she specializes in trauma and play therapy and that her role is to help the victim process.[42]    She explained that CAC, Hope House is a facility that completes forensic interviews and offers counseling for children who may have experienced some type of trauma.    The victim in this case was brought in by her mother on May 12, 2015, after she had completed a forensic interview at the center and there had been allegations of sexual abuse.[43]    However, the victim first disclosed to counselor Lott a description of the sexual abuse that differed from her initial account to Nurse Troy.    Lott

---

[41]  State Rec., Vol. 2 of 7, Trial Transcript (Earniesha Lott's testimony), pp. 236-46.

[42]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 237, 246.

[43]  State Rec., Vol. 2 of 7, Trial Transcript, p. 238.

reported it to the police, which resulted in the superseding indictment for aggravated rape. The state courts determined that Lott's testimony fell within the exception provided under Louisiana Code of Evidence article 803(4), insofar as it was reasonably pertinent to medical treatment or diagnosis in connection with treatment. [44]   Trial counsel was not constitutionally ineffective for failing to object to the testimony by Nurse Troy and counselor Lott regarding the victim's statements because any objection based on hearsay would have been without merit.   *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (" '[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.' ") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Furthermore, even if Galan could point to some instance of improper hearsay elicited by the State, counsel is not inevitably constitutionally ineffective for failing to object.   On the contrary, it is clear that "[t]he failure to object generally falls within the ambit of trial strategy."   *Sylve v. Cain*, Civ. Action No. 14-1180, 2016 WL 4592135, at *5 (E.D. La. Sept. 1,

---

[44]   Under Louisiana Code of Evidence article 803(4), the Comments to Exception (4)-1988 provide:

The person to whom the statement is made need not be a physician for this Paragraph to apply, provided that the statement is made in connection with medical treatment. See Fed. R. Evid. 803(4), Advisory Committee's Note. See also 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(4)[01] (1984); Comment, "Exceptions to the Hearsay Rule: Expanding the Limits of Admissibility," 36 La. L. Rev. 159 (1975).

The Advisory Committee Note to Paragraph (4) of Fed. R. Evid. 803 provides similarly that "[u]nder the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Fed. R. Evid. 803(4), Advisory Committee's Note.

2016) (Brown, J.) (footnote and quotation marks omitted).    Moreover, strategic choices by

counsel are to be afforded a high degree of deference:

> The United States Supreme Court has cautioned courts not to second-guess
> counsel's decisions on matters of trial tactics through the distorting lens of
> hindsight. Courts are to employ a strong presumption that counsel's conduct
> falls within a wide range of reasonable assistance and, under the
> circumstances, might be considered sound trial strategy. A conscious and
> informed decision on trial tactics and strategy cannot be the basis for
> constitutionally ineffective assistance of counsel unless it is so ill chosen that
> it permeates the entire trial with obvious unfairness.

*Id.* (quotation marks and footnotes omitted); accord *Strickland*, 466 U.S. at 689 ("Judicial

scrutiny of counsel's performance must be highly deferential. ... [A] court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under

the circumstances, the challenged action might be considered sound trial strategy."

(quotation marks omitted)); *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993); *Forman v.

Cain*, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008).

The decision not to object to hearsay testimony was objectively reasonable strategy

for this bench trial.    As the trier of fact, the trial judge would be able to afford the

appropriate weight to the evidence elicited at trial.    The State had already introduced

direct evidence in the form of the victim's testimony, and her videotaped Children's

Advocacy Center (CAC) statement made to Jo Beth Rickels was played.[45]    The victim read

directly from her trauma narrative she wrote during her counseling sessions with Lott.[46]

---

[45]  State Rec., Vol. 2 of 7, Trial Transcript, p. 164.

[46]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 173-78.

Defense counsel had the opportunity to cross-examine her about why she had not made the statement about penetration initially, which defense counsel also addressed with Nurse Troy.[47]   Her younger sister, F.G., had also testified how she witnessed her father sexually abusing the victim and how she told their mother about it.   Her videotaped CAC statement was also played.[48]   The state district court noted that Lott's testimony as to how they made the trauma narrative during their sessions and her testimony concerning the victim's statements was cumulative of the victim's direct testimony.   Given the clear, consistent, and compelling direct account offered by the victim herself, counsel made the objectively reasonable choice not to raise a likely futile objection based on hearsay when Lott and Nurse Troy testified regarding the victim's statements.   Furthermore, as the state district court reasoned, even assuming for the sake of argument that counsel's failure to object to hearsay constituted deficient performance, no prejudice resulted under the circumstances.

The state courts also determined that counsel was not ineffective for failing to object to the witnesses' testimony about delayed disclosure because it was not improper under state law.[49]   Lott did not offer an opinion, lay or otherwise, regarding delayed disclosure. She did not testify as an expert witness.   In fact, as the state district court explained in its reasons for denying post-conviction relief, in response to a defense objection at the start of Lott's testimony about the victim's trauma narrative, the trial court restricted her testimony

---

[47]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 187-88.

[48]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 199-202.

[49]   In support of his argument that the testimony was improper under state law, Galan cites to *State v. Foret*, 628 So.2d 1116 (La. 1993).   Rec. Doc. 3-1, p. 17.

and cautioned her not to express an opinion because she was not testifying as an expert witness.[50]    On cross-examination, defense counsel was allowed latitude from the court to elicit testimony from Lott, over the State's objection, about false memory syndrome.    The record confirms that Lott's testimony was factual in nature, based on her three years of counseling the victim, and related only the fact that the victim first disclosed to Lott new information about a different kind of sexual contact she had with her father.    She did not comment on the underlying psychology or process related to delayed disclosure.    Nor did she offer an opinion on the victim's credibility.    Near the end of direct examination, the prosecutor asked if the victim had ever taken back any of the disclosures she had made, ever told her she was lying, or ever given her a reason to think she was lying.    Lott simply replied "no" or "never" to each question.[51]    Rather than objecting to these questions, defense counsel reasonably chose to raise doubt about the victim's memories during Lott's cross-examination testimony.[52]

Nurse Troy testified as an expert in the field of delayed disclosure.    She testified "[t]hat is the norm to have it take a long time for kids to feel like they could say something to anybody because of feeling guilt and shame and fear."[53]    In other words, she expressed only that it is an ordinary event under these circumstances.    She testified that the victim related

---

[50]   State Rec., Vol. 2 of 7, Trial Transcript, p. 240.

[51]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 243-44.

[52]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 244-46.

[53]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 343-44.

a clear and detailed history of sexual abuse by her biological father involving penile/anal

contact and that her findings were consistent with sexual abuse.    She did not offer an

opinion as to the victim's credibility.    Her testimony fell squarely within the scope of her

expertise.    Because Galan fails to demonstrate that either Nurse Troy or counselor Lott's

testimony was inadmissible under Louisiana law, trial counsel did not perform deficiently

by failing to object, and the ineffective-assistance-of-counsel claim was reasonably rejected

by the state courts.

3.  *Expert Testimony*

Galan contends that he was denied effective assistance of trial counsel when counsel

failed to call an expert witness to rebut the State's expert witness at trial.    Defense counsel

tried unsuccessfully to request funds to hire an expert for the defense; the motion was

denied.[54]    Galan argues that counsel should have challenged the trial court's ruling denying

the motion by supervisory writ application to the court of appeal.    Galan alleges that "[a]n

expert would have given counsel the ability to fully develop and address all issues raised at

trial concerning: 1) expert opinion on the lack of injury or physical evidence; 2) expert

opinion on belated discovery evidence; 3) inadmissible expert opinion on psychological

evidence given at trial; and 4) expert opinion on other reasonable hypotheses of the

incident."[55]  As to prejudice, he references the point during trial where the State introduced

"belated exculpatory evidence" (discussed under IAC claim 1), and the defense had no expert

---

[54]  State Rec., Vol. 1 of 7, pp. 96, 102.

[55]  Rec. Doc. 3-1, p. 19.

to rebut the evidence.

The state courts rejected the claim.    The district court found that the claim was conclusory and lacked factual support because Galan failed to state with reasonable particularity what information a defense expert would have testified about and how it would have altered the outcome of the trial.    Further, the court noted that defense counsel cross-examined Nurse Troy to emphasize the lack of physical evidence and introduced an exhibit through her to bolster the defense.    The state appellate courts denied relief under *Strickland* without additional reasons.

To establish a claim of ineffective assistance for failure to call an expert witness, a habeas petitioner has to demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In doing so, a petitioner must show that the expert witness would have actually testified at trial and how the testimony would have been favorable to the defense.    *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).    There must be a reasonable probability that the uncalled witnesses would have made a difference to the result at trial.    *Id.* at 603.    Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony.    *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).    *Strickland* does not demand that for every prosecution expert the defense retain a similar defense expert.    *See Harrington*, 562 U.S. at 106-111 (noting that it would be well within the bounds of a reasonable judicial determination for a state court to conclude that defense counsel could follow a strategy that did not require the use of experts).    To the

contrary, the matter is one of discretion, and indeed, the United States Supreme Court has recognized that "[i]n many instances, cross examination [of the prosecution's expert] will be sufficient to expose defects in an expert's presentation."   *Id.* at 111.   "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy."   *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007).

Here, the state courts recognized that Galan failed to identify an expert witness who would have testified for the defense at trial, much less one who would have contradicted Nurse Troy's testimony.   His allegation to this effect is entirely speculative and conclusory, as the state courts reasonably held.   When the State produced additional evidence during trial related to F.G., and the trial court considered granting the defense's mistrial motion, defense counsel raised the possibility that he might need an expert to review the medical records and suggested that he might have pushed harder to retain an expert had the evidence been provided timely.   The trial court indicated that it had already denied the request for an expert and that the defense had nothing to show that an expert was required based on the new evidence.   Moreover, it is clear from the record that defense counsel believed he could proceed with trial without an expert, and that seeking writs would likely prove futile, because he declined the trial court's offer to continue trial, renew his motion for funding for an expert, or seek writs after he had the opportunity to review the records.   He obviously lacked additional specific support to bolster him taking such actions.   While Galan suggests that the decision by defense counsel was motivated by an impending start date for a new job and purported desire to finish the trial, the record contradicts the allegation.   With the

ample extra time that defense counsel was given by the trial court to review the newly produced evidence, he effectively cross-examined Nurse Troy about the lack of physical evidence in this case and the drawing by F.G.    Defense counsel's cross-examination revealed that he was well-prepared and possessed the requisite expertise and knowledge to challenge Nurse Troy's testimony.    The state courts reasonably rejected this claim under *Strickland.*

     *4.   Impeached testimony by the victim*

Galan claims that trial counsel was ineffective for failing to object to the victim's purportedly "impeached" testimony at trial as insufficient to support the conviction.    He argues that counsel should have objected to the irreconcilable contradictions between the victim and her sister and lack of credibility in the victim's story, which he alleges changed over time because she was coached by her counselor, Lott.[56]    The state district court rejected the claim.    The court reasoned that, as the finder of fact, the trial judge considered and weighed the evidence in its entirety, including the discrepancies that existed in the testimony.    Instead of rising to the level of impeachment, those slight discrepancies reinforced for the trial judge that the victim and her sister were *not* coached, thus leading the trial judge to believe the victim and her sister rather than the defendant.[57] Furthermore, the victim's testimony did not stand alone because her sister testified to the anal rape she witnessed.    Thus, the district court found that trial counsel did not perform

---

[56]   Rec. Doc. 3-1, p. 24.

[57]   State Rec., Vol. 2 of 7, Trial Transcript, pp. 397-400.

deficiently because he had no grounds for an insufficiency-of-the-evidence objection based on the victim's alleged impeached testimony.    The appellate courts denied relief under *Strickland* without citing additional reasons.

The State argues that the state courts reasonably rejected the claim under *Strickland* because the "impeached testimony" objection sought by Galan was meritless, as evidenced by the state district court's reasoning and confirmed by the rejection of the substantive sufficiency-of-the-evidence claim raised on direct appeal.    The Court agrees.    Contrary to Galan's allegation, the record evidence supporting the verdict did not consist solely of the impeached testimony by the victim.    The slight inconsistencies did not amount to impeachment, but rather, evidence for the trier of fact to consider when weighing the credibility of the witnesses.    Nor was the victim the sole testifying witness.    Her sister also testified at trial to what she saw Galan doing with the victim.    And regardless, as set forth by the Louisiana First Circuit on direct appeal, the law provides that the victim's testimony alone, if believed, suffices to support a conviction.    *Galan*, 277 So.3d at 369. Galan was not precluded from raising the sufficiency claim, albeit unsuccessfully, on appeal. The state courts properly rejected Galan's claim that defense counsel was constitutionally ineffective for failing to assert that meritless claim at the trial court level.    This claim does not warrant relief.

To the extent the claim might be construed as challenging the sufficiency of the evidence presented at trial, that claim fares no better.[58]    The claim was raised and rejected

---

[58] In stating his issues on collateral review, Galan framed the claim as one of ineffective assistance of counsel.    It is unclear from the rulings by the state courts if any framed the claim alternatively as one alleging a due process violation.    However, because

on direct appeal.     In denying the claim, the Louisiana First Circuit reasoned:

> A conviction based on insufficient evidence cannot stand, as it violates due process. *See* U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Oliphant*, 13-2973 (La. 2/21/14), 133 So.3d 1255, 1258 (per curiam); *see also* La. Code Crim. Pro. art. 821B; *State v. Mussall*, 523 So.2d 1305, 1308-09 (La. 1988). When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *Oliphant*, 133 So.3d at 1258.

> The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. *State v. Mire*, 14-2295 (La. 1/27/16), 269 So.3d 698, 703–04 (per curiam) (2016 WL 314814, *4). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Gardner*, 16-0192 (La. App. 1 Cir. 9/19/16), 204 So.3d 265, 267. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. *State v. Livous*, 18-0016 (La. App. 1 Cir. 9/24/18), 259 So.3d 1036, 1040, *writ denied*, 18-1788 (La. 4/15/19), 267 So.3d 1130.

> Rape is "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. R.S. 14:41A. "Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." La. R.S. 14:41B. The crime of aggravated rape includes a rape committed where the sexual intercourse is deemed to be without lawful consent of the victim because it is committed when the victim is under the age of thirteen years. La. R.S. 14:42A(4).

> E.B.R.M. testified that the defendant raped her multiple times when she was eleven years old. Her testimony detailed the act, explicitly describing sexual

---

the claim was raised and exhausted on direct appeal, the Court will address it briefly.

penetration. E.B.R.M.'s sister, F.G., testified that on one occasion she awoke in the same bed as E.B.R.M., lifted the covers, and saw the defendant raping E.B.R.M. She too explicitly described sexual penetration. The defendant contends that without corroborating physical evidence, the testimony of E.B.R.M. and her sister, is insufficient to prove penetration occurred. He argues the lack of physical evidence is more consistent with an early statement by E.B.R.M. that the defendant placed his penis between her buttocks. The defendant's argument is legally incorrect.

If believed, the testimony of the victim alone, with no other evidence, is sufficient to prove the elements of the offense. *State v. Alexander*, 14-1619 (La. App. 1 Cir. 9/18/15), 182 So.3d 126, 131, *writ denied*, 15-1912 (La. 1/25/16), 185 So.3d 748; *State v. James*, 02-2079 (La. App. 1 Cir. 5/9/03), 849 So.2d 574, 581. Also, if believed, and in the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness is sufficient to support a factual conclusion. *State v. Higgins*, 03-1980 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the accepted evidence insufficient. *Alexander*, 182 So.3d at 131.

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of weight given evidence is not subject to appellate review. An appellate court will not re-weigh evidence to overturn a factfinder's determination of guilt. *Alexander*, 182 So.3d at 131.

The defendant waived his right to be tried by a jury and elected to proceed with a bench trial. The trial judge specifically found the testimony of E.B.R.M. and F.G. credible and found no evidence either was coached as suggested by the defendant. Although the defendant suggests their testimony is inconsistent with E.B.R.M.'s normal physical exam, Ann Troy, the forensic nurse practitioner who examined E.B.R.M. and testified as an expert in the field of child maltreatment specializing in sexual abuse and delayed disclosure, explained normal findings are common in children because their bodies heal very quickly. Viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, that all elements of aggravated rape were proven.

The evidence supports the trial court's verdict that the defendant was guilty

of aggravated rape. This assignment of error is without merit.[59]

The Louisiana Supreme Court denied relief without additional stated reasons.

The Louisiana First Circuit properly analyzed the claim using the *Jackson v. Virginia* standard, which requires a determination regarding whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to

---

[59] *Galan*, 277 So.3d at 368-69.

convict or acquit.' "   *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting

*Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

Here, the court of appeal concluded that the evidence was sufficient for the jury to find beyond a reasonable doubt that Galan was guilty of aggravated rape of a person under the age of 13 years.   Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000). Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."   *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Galan essentially claims that the victim's "impeached," or rather, unbelievable and untruthful testimony, was the sole evidence against him and did not suffice to support the guilty verdict.   However, the state appellate court discussed the testimony offered by the victim and her sister when resolving the sufficiency claim and noted that the trial judge in this case considered the evidence in its entirety.   Whether to find the witnesses' testimony persuasive or to reject any part or all of it was a pure credibility call.   The Court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses.   *Jackson*, 443 U.S. at 319.   To the extent his sufficiency

claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.   *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Davis v. Davis*, 807 F. App'x 337, 340 (5th Cir. 2020) (upholding denial of habeas relief on a sufficiency-of-the-evidence claim where petitioner challenged the jury's credibility determinations and weighing of the evidence); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.").

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.   Galan cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### 5.   *Right to a Jury Trial*

Galan claims that counsel failed to consult with him and simply forced him to waive his right to a jury trial.   He alleges that counsel offered no explanation and told him "what to do and when to do it," and if he did not go along, then his counsel would "leave him to the wolves."[60]   Defense counsel told him that "he had to go to a judge trial or else he would pick up his stuff and go back home to Mississippi, and leave the Petitioner on his own."[61]   He claims he was treated as incompetent to assist in his defense due to his language barrier,

---

[60]   Rec. Doc. 3-1, p. 26.

[61]   *Id.*

hearing problem and ignorance of the law and court procedure.    The claim was rejected by

the state courts.    In rejecting the claim that counsel was ineffective, the district court

explained:

> The record fails to support Galan's contentions.    Galan, who professes not to
> be able to read, write or speak the English language, was represented by a
> Spanish speaking attorney and was additionally provided with a Spanish
> interpreter for court hearings.[62]    The decision to waive his right to a jury trial
> and to proceed with a bench trial was made at a pretrial hearing held on
> February 26, 2018.    See R. Vol. 1, p. 138-145.    On that date, defense counsel
> stated that he had thoroughly discussed the decision to waive the jury with the
> petitioner.    Galan personally participated in a colloquy with the Court,
> through his interpreter, to ensure that he fully understood the right to jury
> trial that he was waiving and how the trial would be conducted by the judge
> alone.
>
> Before trial began on April 2, 2018, the state asked the petitioner to confirm
> that he wanted to proceed as a judge trial.    Defense counsel offered that
> proffer, but the Court personally addressed Galan, asking if he wished to
> proceed by bench trial and to waive his right to trial by jury.    Galan
> responded that he "agree[d] to continue."    R. Vol. 2, p. 149-50.
>
> The Court finds that the record does not support Galan's assertions in this
> regard.    The election to proceed by bench trial was not made by counsel
> alone.    Instead, the record shows that Galan personally indicated on two
> separate occasions on the record that he wished to proceed by judge trial.
> Galan had the aid of Spanish speaking interpreters on both occasions to
> communicate with the Court.
>
> The Court holds that the petitioner is unable to satisfy the deficient
> performance prong of the *Strickland* analysis.    The Court finds nothing in the
> record to indicate that counsel's conduct fell below the range of reasonable
> professional assistance.    *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.    This
> issue has no merit.[63]

The appellate courts likewise denied relief without additional reasons.

---

[62]  The allegations of Galan's hearing impairment will be addressed in Issue #6.

[63]  State Rec., Vol. 5 of 7, Judgment on Post-Conviction (footnote in original), pp. 7-8.

Galan first suggests that his counsel did not inform him about his right to a jury trial. However, the state courts found that Galan was advised of his right to a jury trial, through an interpreter, and he chose to proceed with a bench trial.    That factual finding is fully supported by the February 2018 pretrial hearing transcript and the April 2, 2018 trial transcript.

The colloquy at the pre-trial hearing on February 26, 2018, including the following exchange (through sworn interpreter):

> THE COURT:
>
> And my understanding is there was a motion to be made relative to the jury.
>
> MR. OROZCO:
>
> Yes, Your Honor.    Both parties are waiving their 45 day notice and we are moving to have a bench trial instead of a jury trial
>
> THE COURT:
>
> And I would be of an assumption that you discussed that issue with Mr. Galan?
>
> MR. OROZCO:
>
> Yes, Your Honor.    We discussed it this morning.
>
> THE COURT:
>
> Okay.    Let me ask a couple of questions of Mr. Galan before I will agree to allow him to waive the jury.    Mr. Galan, I understand that your attorney has advised the court that you wish to waive your right to trial by jury in this matter.    Is that correct?
>
> INTERPRETER:
>
> Yes, that's correct.
>
> THE COURT:
>
> While your attorney of course is able to advise you as to his opinion as

to whether you should go to trial by jury or before me as a judge in a bench trial, you ultimately have the constitutional right to a trial by jury and it's your decision alone whether to waive the jury.     Do you understand that that is your decision alone?

INTERPRETER:

Yes, I understand.


THE COURT:

If you proceeded with a jury trial, of course ten members of the twelve person panel would have to agree in a verdict of your guilt or innocence, do you understand that?

INTERPRETER:

Yes.

THE COURT:

And if I were to hear the trial without the benefit of the jury, I alone will make that decision of your guilt or innocence.

INTERPRETER:

Yes.

THE COURT:

Do you have any questions of me or of your counsel about your right to trial by jury and your decision to waive it?

INTERPRETER:

I think it's clear.     My attorney already explained it to me.

THE COURT:

Very good.     I will accept the decision by Mr. Galan to waive trial by jury.

MR. OROZCO:

And Your Honor, just for the Record, we discussed this this morning with our client.     We explained the option, the benefits and the cons.     We

spent about twenty minutes and we did answer several questions that he had
being that he's not very familiar with our court system.    Specifically, Your
Honor, we explained that Louisiana, it has to be a 10-2 verdict to convict or
acquit.    And we explained that it is not a unanimous decision.

And we also explained any other issues with respect to the trial, that
we would not be doing jury instructions, that there would be no jury or anyone
other deliberating this matter other than yourself.

THE COURT:

Okay.    That's noted.[64]

On April 2, 2018, the first day of trial, the prosecutor asked again for confirmation
that Galan still wished to proceed with a bench trial.    The following exchange occurred
(through sworn interpreters):

BY MR. OROZCO:

Your Honor, do you want me to proffer that?

BY THE COURT:

If you don't mind.

BY MR. OROZCO:

Your Honor, I informed my client of his options to go with a bench trial
or a jury trial.    At the last hearing we had, he agreed to have a bench trial.
At this point, he still wants to go forward with a bench trial.

BY THE COURT:

Mr. Galan, is that correct?    You wish to proceed by a bench trial,
waiving your right to trial by jury?

BY THE WITNESS:

I agree to continue.[65]

---

[64]  State Rec., Vol 1 of 7, Hearing Transcript (February 26, 2018), pp. 140-43.

[65]  State Rec., Vol. 2 of 7, Trial Transcript (April 2, 2018), pp. 149-50.

With the benefit of both his Spanish speaking attorney and Spanish interpreter, Galan confirmed that he understood the right he was waiving and what it meant to proceed to a bench trial with the judge alone and agreed to continue.    Galan plainly participated in the waiver of the right to jury trial and made an informed, intelligent decision on his own accord to proceed with a bench trial.

As for any suggestion that counsel's advice to waive the right to trial by jury and proceed with a bench trial was substandard, the matter is one left to an attorney's vast discretion and hardly objectively unreasonable under the circumstances.    An attorney's decision "to recommend a bench trial to his client is the type of act for which *Strickland* requires that judicial scrutiny be highly deferential."    *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989); accord *Cazier v. Thaler*, Civ. Action No. SA-09-CV-727, 2010 WL 518241, at *6 (W.D. Tex. Feb. 3, 2010).    Here there was a potential language barrier and a heinous accusation that Galan raped his biological daughter.    The nature of the crime is particularly disturbing, rightly so for lay jurors, and the matter at least arguably better-suited for a trial before a seasoned judge.    That professional discretion in weighing the troubling factors involved, rather than counsel's alleged personal desire to rush a trial that was already prescheduled, guided the difficult but objectively sound advice in this case.[66]

Finally, Galan has not shown that it is reasonably likely "a different factfinder (*i.e.*, a jury)" would have arrived at a different outcome, as he must to establish prejudice.    *Green*, 868 F.2d at 178; accord *Bourgeois v. Bergeron*, Civ. Action No. 09-3185, 2009 WL 5088756,

---

[66]   State Rec., Vol. 2 of 7, Trial Transcript of Closing Argument, p. 357.

at *13 (E.D. La. Dec. 23, 2009) ("[A] petitioner is not entitled to federal habeas corpus relief

based on [a claim that defense counsel was ineffective for advising petitioner to waive his

right to a jury trial] unless he demonstrates that a different factfinder, i.e. a jury, would have

rendered a different verdict.").    Given the victim's compelling testimony in this case, there

is no reasonable probability that a jury would have reached a different verdict.    For all

these reasons, this claim does not warrant relief.

    *6. Hearing Problems*

    Galan claims that his counsel was constitutionally ineffective because although he

knew that his client was hearing impaired and used a hearing aid, he failed to ask the court

for accommodations.    He does not specify what accommodations he needed that were not

provided.    The state district court rejected the argument as "factually inaccurate."    The

court explained:

> The Court was made aware of Galan's hearing difficulties through defense
> counsel.    To help Galan understand the proceedings, the trial judge
> presented Galan with the judge's own set of noise cancelling headphones for
> him to wear in court during hearings to help him concentrate on his
> interpreter's speaking only.    The record reflects this in the transcript of the
> hearing held on February 26, 2018, when the headset was not needed because
> there was no one else in the courtroom.    R. Vol. 1, p. 139.    The record also
> reflects that defense counsel asked the victim's sister on cross-examination to
> speak louder, reminding her that her father was deaf in one ear and that the
> defendant was using a translator.    R. Vol. 2, p. 209.    Galan's trial counsel,
> Ramiro Orozco, speaks Spanish.    Additionally, the Court made sure there
> was a Spanish speaking interpreter for each court proceeding.    R. Vol. 1, pp.
> 132-34, 138-40; R. Vol. 2, p. 147-49, 264-265, 328-330.    Finally, at the trial
> of this matter, two interpreters were present to help translate for Galan.

> The Court holds that the petitioner is unable to satisfy the deficient
> performance prong of the *Strickland* analysis.    The Court finds nothing in the
> record to indicate that counsel's actions fell below the range of reasonable
> professional assistance.    *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.
> Instead, the Court finds that every effort was made to ensure that Galan fully

heard and understood the court proceedings.    This issue has no merit.[67]

The appellate courts likewise denied relief without additional reasons.

Galan's defense counsel, the trial judge, and his interpreters all knew about his hearing problem and language barrier, and they made sure each time Galan was in court that he was able to understand the proceedings.    Galan wore a hearing aid.    He was given noise canceling headphones by the trial court.    He had Spanish interpreters and a Spanish speaking attorney present to aid him in translation.    Defense counsel asked witnesses to speak louder when necessary.    The state court reasonably found that Galan failed to establish deficient performance by counsel in accommodating Galan's hearing difficulties. Furthermore, in his memorandum, Galan does not even acknowledge these accommodations, much less allege that they were deficient.    Galan has not established that, despite being provided with these accommodations and a Spanish interpreter throughout trial, he was prejudiced by any alleged failure to further accommodate his hearing loss.    He is not entitled to relief on this claim.

   *7.  Replacement Translator*

Galan contends that defense counsel was ineffective in failing to request a replacement translator.    He argues that the interpreter's translations were often incorrect or not understandable, especially to a person with hearing problems.    Further, Galan asserts that defense counsel complained about the interpreter, but did not bring the problem to the court's attention or attempt to get a competent interpreter.    In denying the claim, the

---

[67]  State Rec., Vol. 5 of 7, Judgment on Post-Conviction, pp. 8-9.

state district court set forth the reasons it found no deficient performance:

> The record contains a stipulation by defense counsel as to the competence of the interpreter, Dolores Garcia.   R. Vol. p. 133-134 ("We also have the interpreter and we have no objection to the skills of the interpreter.")   The same interpreter was present at all of the hearings of record.   She was joined at the trial by two other interpreters, Reyna Croft (April 2, 2018) and Andrea Freitas (April 3 and 5, 2018).   Although there is no indication of the qualifications of the additional two interpreters on record, it is clear that Dolores Garcia, whose competence was stipulated to by the defense, was present at all court hearings.   If there had been a question about or inaccuracy in a translation, she would have been there to address the issue. Moreover, since defense counsel spoke Spanish, he would have been able to correct an inaccuracy or omission.   *See* R. Vol. 2, p. 183 (the witness stated something in Spanish and trial counsel interpreted).

> The Court finds that Galan does not point to any specific instances in which the Spanish translation was inept during trial or otherwise or that an objection was lodged.   The record fails to show that any problems arose during the translations.   Instead, Galan had a Spanish speaking counsel, who stipulated on the record to the competence of the main interpreter.   *Compare State v. Gonzalez*, 2007-0532, p. 4-5 (La. App. 4 Cir. 11/28/07), 973 So.2d 115, 117.

> The Court holds that the petitioner is unable to satisfy the deficient performance prong of the *Strickland* analysis.   The Court finds nothing in the record to indicate that counsel's conduct fell below the range of reasonable professional assistance.   *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Instead, the Court finds that every effort was made to ensure that Galan understood the court proceedings in his native language.[68]

The appellate courts likewise denied relief without additional stated reasons.

Defense counsel ensured that defendant had Spanish interpreters present for

---

[68]   State Rec., Vol. 5 of 7, Judgment on Post-Conviction, pp. 9-10.

hearings and trial.[69]   Dolores Garcia was sworn in by the trial court on May 16, 2017.[70]
The record indicates that defense counsel had no objection to Garcia and indeed stipulated
to the skills of the interpreter.   Garcia was present each day of the three-day trial.   The
trial court ordered that a second interpreter be present as well.   Thus, Garcia was joined
by another Spanish interpreter each day of trial.[71]   Clearly, Galan was not denied an
interpreter.   Rather, he claims he was denied adequate interpretation and that counsel
knew but failed to remedy that issue.   However, as the state courts reasonably found, there
is nothing in the record to indicate that any of the interpreters appeared inadequate in
translating for Galan.   Galan does not cite to any examples of misinterpretation in the
record.   He offers only self-serving assertions that the interpretation was inadequate
without even specifying which interpreter was problematic.   Certainly, his testimony on
the stand gives no indication that he had difficulty understanding the interpreter.[72]
"[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional
issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000),
*cert. denied*, 531 U.S. 849 (2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

---

[69]   Galan filed his own motion for an interpreter in May 2015.   State Rec., Vol. 1 of 7,
p. 36.   Multiple requests by defense counsel followed.   State Rec., Vol. 1 of 7, Motion
English to Spanish Interpreter, p. 52; Motion for Interpreter, p. 87; Addendum to Motion, p.
99.   The court granted the request for an interpreter.   State Record, Vol. 1 of 7, p. 100.
The court took steps to have an interpreter present for the week of trial. State Rec., Vol. 1 of
7, p. 106.

[70]   State Rec., Vol. 1 of 7, Transcript of May 16, 2017, pp. 133-34.

[71]   State Rec., Vol. 2 of 7, Transcript, pp. 149, 265, 330.

[72]   State Rec., Vol. 2 of 7, Trial Transcript (Victor Galan), pp. 358-81.

This claim does not warrant relief.

For the foregoing reasons, Galan has not demonstrated that the state courts' decision rejecting these claims of ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Thus, Galan is not entitled to federal habeas corpus relief.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Galan's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[73]

New Orleans, Louisiana, this ___24th___ day of _____July_____, 2023.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[73] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.